1 F.3d 176
 George KOST and Francis Ferri, Appellants,
v.
Charles KOZAKIEWICZ, Warden, James Gregg, Deputy Warden,
U Balogh, Lieutenant, Allegheny County Jail,
Unknown Executives and Officers, Allegheny County
Solicitor's Office, Goldline Laboratories, Gatti Services.
 No. 92-3386.
 United States Court of Appeals,
Third Circuit.
 Submitted Under Third Circuit Rule 12(6) May 3, 1993.
Decided July 28, 1993.
 
 David E. Kenner, Professional Law Corp., Encino, CA, for appellants.
 Mark F. Haak, Vincent A. Coppola, Pietragallo, Bosick & Gordon, Pittsburgh, PA, for appellees Kozakiewicz, Gregg, Balogh, Allegheny County Jail, Allegheny Solicitor.
 Amy E. Ault, Robb, Leonard & Mulvihill, Pittsburgh, PA, for Goldline Lab.
 Thomas R. Doyle, Pittsburgh, PA, for Gatti Services.
 Before: COWEN, ROTH, and ROSENN, Circuit Judges
 OPINION OF THE COURT
 ROSENN, Circuit Judge.
 
 
 1
 This appeal by two federal pretrial detainees housed under contract in the Allegheny County, Pennsylvania jail raises the question whether an existing class action against the defendants provided the plaintiffs with all the relief afforded them for their claims arising from their confinement under the United States Constitution and the Civil Rights Act, 42 U.S.C.A. Secs. 1983, 1985, and 1986 (West 1991). We also consider whether certain counts of the complaint regarding alleged intolerable conditions and treatment at the facility are barred by a two- or six-year statute of limitations. The district court entered summary judgment in favor of all defendants. The plaintiffs timely appealed. We affirm the court's grant of summary judgment as to some of their claims. We vacate the court's grant of summary judgment as to other claims and remand with instructions to dismiss. As to the remaining claims, we reverse and remand for further proceedings consistent with this opinion.
 
 I. BACKGROUND
 
 2
 On July 18, 1991, the plaintiffs George Kost and Francis Ferri filed a lengthy complaint in the United States District Court for the Western District of Pennsylvania against the defendants Charles Kozakiewicz, warden of the Allegheny County Jail (ACJ), other jail officials, Allegheny County, and certain county officials (referred to hereinafter collectively as the ACJ defendants or appellees); Goldline Laboratories (Goldline), a distributor of medical supplies; and Gatti Services (Gatti), a pharmacy. The complaint alleged in five counts forty-five various violations of plaintiffs' rights under Secs. 1983, 1985(2) and (3), and 1986, and the First, Fifth, Sixth, Eighth, and Fourteenth Amendments to the Constitution.
 
 
 3
 Goldline and the ACJ defendants filed separate motions to dismiss pursuant to various subsections of Federal Rule of Civil Procedure Rule 12(b). Gatti filed a similar motion to dismiss, and in the alternative, because it submitted with its filing an affidavit executed by its president, a motion for summary judgment. The district court referred the case to a magistrate judge who submitted a report stating that "[e]ach defendant has filed either a Rule 56 motion for summary judgment or a Rule 12(b)(6) motion to dismiss. Review of the pleadings and case law reveals that defendants' motions should be granted."
 
 
 4
 Plaintiffs filed objections to the magistrate judge's report. After de novo review, the district court entered an order adopting the report as the opinion of the court and granting summary judgment in favor of all defendants. Appellants timely appealed.[1]
 
 
 5
 Over the years, the ACJ has been the subject of considerable litigation regarding conditions at the facility, and some conditions have been adjudged unconstitutional. The ACJ was under court order to remedy these conditions by 1992.
 
 
 6
 All events relied upon by plaintiffs to establish their claims took place between February 20, 1987, and August 3, 1989. At some time during this period, each plaintiff was a federal pretrial detainee housed at the ACJ pursuant to a contract or some other arrangement between the United States and Allegheny County. Each plaintiff spent part of his time at the ACJ in the Disciplinary Housing Unit (DHU). Kost was housed in the DHU during the month of June 1988. Ferri was housed in the DHU from May 16, 1989, through August 1, 1989. They are currently inmates at the federal penitentiary in Leavenworth, Kansas.
 
 II. ANALYSIS OF PLAINTIFFS' CLAIMS
 A. COUNT I
 
 7
 Plaintiffs alleged in Count I of their complaint that 1) inadequate heating and ventilation in the ACJ, combined with inmate exposure to toxic chemicals, exhaust fumes from gasoline operated combustion engines, and other fumes have shortened their life expectancy; 2) unbearable noise pollution and poor lighting within the cells at the ACJ have caused them "to suffer degenerative hearing and eyesight"; 3) unsanitary food preparation and serving procedures, coupled with inadequate and unsanitary personal hygiene and general living conditions, have caused them to incur diseases and have shortened their life expectancy; and 4) they have been caused needless pain and suffering.
 
 B. COUNT II
 
 8
 Plaintiffs alleged in Count II of their complaint that the ACJ defendants: 1) impeded and obstructed their access to the courts and adequate law library facilities; 2) confiscated their legal documents; 3) provided no facilities within their individual cells for the retention of their legal documents; 4) allowed unbearable temperatures and overcrowding in the waiting area (bull-pen) where they were held for court appearances; and 5) caused them needless pain and suffering.
 
 C. COUNT III
 
 9
 Count III of the complaint is based on two sets of events that allegedly occurred during Ferri's confinement in the DHU between May 16, 1989, and August 1, 1989. These events allegedly culminated in Ferri's suffering a lice infestation and a series of heatstrokes.
 
 
 10
 As to the lice infestation, plaintiffs alleged in their complaint that: 1) Goldline supplied the ACJ and/or Gatti with medical supplies for use in the treatment of inmates at the ACJ; 2) Gatti was under contract to provide medical services for the inmate population; 3) Goldline and Gatti bore a duty to them with respect to their medical care and welfare; 4) while in the DHU, the ACJ defendants inflicted upon Ferri unsanitary cells, shower facilities, bedding, and towels; 5) Ferri became infested with head and body lice because the ACJ defendants provided him with dirty bedding; 6) Goldline and Gatti supplied Ferri with inferior products and services in the treatment of the lice infestation; 7) the ACJ defendants failed to provide Ferri with the necessary medical care to cure the infestation; and 8) the infestation therefore remained with him until he was transferred out of the ACJ on August 4, 1989, causing him unbearable and needless pain and suffering for a 70-day period.
 
 
 11
 As to the series of heatstrokes, plaintiffs alleged in their complaint that: the ACJ defendants inflicted upon Ferri a total lack of ventilation coupled with cell temperatures "in excess of 90 to 100 degrees daily for 24 hours a day"; unbearable temperatures and lack of ventilation caused Ferri to suffer eight heatstrokes, which have had a degenerative effect upon his mental, physical, and "physicological" capacities; and his complaints to jail officials regarding the heatstrokes fell on deaf ears.
 
 D. COUNT IV
 
 12
 Count IV of the complaint is based on events that occurred during Kost's confinement in the DHU in June 1988. Plaintiffs alleged in their complaint that: 1) certain ACJ defendants beat Kost at various times, often while he was handcuffed; 2) he was told during one of the beatings that "unless he cooperated with information about an aborted escape attempt ... he would receive more beatings"; 3) when he denied knowledge of the escape attempt, Kozakiewicz informed four of the inmates accused of attempting escape that Kost had indeed informed on them and then placed him in the range of cells within the DHU where the four inmates were housed, thereby jeopardizing his life; 4) during a two-week period, a jail official made daily inspections of Kost's cell, throwing away all toiletry articles and legal documents; and 5) when Kost was called to trial in his criminal case in federal court, jail officials refused to let him shower or shave prior to his appearances and had discarded all his clothing, forcing him to appear in court "like a drunken derelict," which had a negative effect upon his ability to present a defense.
 
 E. COUNT V
 
 13
 Plaintiffs alleged in Count V of their complaint that, beginning some time before the period in question in this case and shortly after Kozakiewicz became warden at the ACJ, various jail officials conspired to create a "goon squad" to inflict pain and suffering upon inmates to satisfy their "lust for brutality" and to instill fear in the general inmate population. Plaintiffs further alleged, as part of this conspiracy, that: 1) various jail officials committed attempted murder and murder; 2) an unusually high number of inmate beatings and injuries took place during the "goon squad" period as compared with prior periods; 3) an unusually high number of inmate deaths, attributable to unknown factors and ruled suicides, occurred during this period; 4) complaints made to jail officials and to members of the Prison Board about the beatings fell on deaf ears and that it was part of the conspiracy that such complaints would be ignored.
 
 
 14
 Plaintiffs also alleged that one object of the conspiracy was to disguise or mask acts of brutality by: performing them in isolated parts of the ACJ; writing an incident report against a beaten inmate falsely accusing him of attacking an officer or of other conduct requiring a physical response from the conspirators; causing internal medical reports to reflect retaliatory action by the conspirators whenever a gratuitously beaten inmate suffered physical injuries that required medical treatment within the ACJ; and having at least one conspirator claim personal injuries from a falsely alleged attack by a gratuitously beaten inmate whenever such an inmate suffered injuries requiring outside medical treatment.
 
 
 15
 Additionally, plaintiffs alleged that: various jail officials used a parabolic microphone to intercept conversations between Ferri and another inmate; in May 1989, Kozakiewicz had all windows and other means and methods of air ventilation in the DHU sealed off, as a result of which from June 1989 through August 1, 1989, Ferri suffered eight heatstrokes in the DHU for which neither jail officials nor Gatti attempted to provide him with any medical care.
 
 
 16
 Plaintiffs also listed overt acts related to the alleged conspiracy. This list primarily sets forth acts involving inmates other than plaintiffs that took place before June 1989. Any acts involving the plaintiffs and/or taking place after July 18, 1989, are those already set forth in Counts III and IV.
 
 
 17
 Plaintiffs requested compensatory and punitive damages in each count.
 
 III. DISCUSSION
 A. PRESERVATION OF ISSUES ON APPEAL
 
 18
 Before discussing the appellants' contentions on appeal, we note first that under Federal Rule of Appellate Procedure 28(a)(3) and (5) and Third Circuit Local Appellate Rule 28.1(a), appellants are required to set forth the issues raised on appeal and to present an argument in support of those issues in their opening brief. Simmons v. City of Philadelphia, 947 F.2d 1042, 1065 (3d Cir.1991) ("absent extraordinary circumstances, briefs must contain statements of all issues presented for appeal, together with supporting arguments and citations"), cert. denied, --- U.S. ----, 112 S.Ct. 1671, 118 L.Ed.2d 391 (1992); 16 Charles A. Wright et al., Federal Practice and Procedure Sec. 3974, at 421 (1977 and Supp.1993, at 690) ("to assure consideration of an issue by the court, the appellant must both raise it in [the] Statement of the Issues and pursue it in the Argument section of the brief"). It is well settled that if an appellant fails to comply with these requirements on a particular issue, the appellant normally has abandoned and waived that issue on appeal and it need not be addressed by the court of appeals. Institute for Scientific Info., Inc. v. Gordon & Breach, Science Publishers, Inc., 931 F.2d 1002, 1011 (3d Cir.1991); Roberts v. N.C. Sawyer, 252 F.2d 286, 287 (10th Cir.1958).
 
 
 19
 In the present case, the appellants have not set forth any issues related to Secs. 1985 and 1986 in their issue statement; additionally, there are no arguments or citations relevant to these statutory sections in the remainder of their brief. Moreover, in their reply brief, they acknowledge the argument advanced by all appellees that the complaint failed to allege a set of facts to support the Secs. 1985 and 1986 claims, and they concede that they have not argued this issue on appeal.[2] Appellants therefore have not preserved any Secs. 1985 and 1986 issues on appeal against any appellee, and thus we decline to address these statutory sections on review.
 
 
 20
 Additionally, appellants seem to suggest on appeal that Goldline and Gatti are liable for injury caused by the allegedly ineffective lice medication prescribed for Ferri under Pennsylvania products liability law. It is also well settled, however, that casual mention of an issue in a brief is cursory treatment insufficient to preserve the issue on appeal. Simmons, 947 F.2d at 1066. The appellants only suggest the existence of these claims in passing in a short footnote in their opening brief, without argument or relevant citation. They never articulate or argue anywhere in that brief the necessary contention that the district court erred in failing to recognize such claims in their complaint.[3] We therefore conclude that appellants have abandoned and waived this issue on appeal.
 
 
 21
 In summary, as to Goldline, we conclude that appellants have not appealed any products liability issue or any Sec. 1985 or Sec. 1986 issue. Further, insofar as appellants concede in their reply brief that no Sec. 1983 claim was ever brought against Goldline, they obviously do not now appeal the district court's disposition of this claim. Therefore, there are no issues whatsoever before us as to Goldline.
 
 
 22
 As to Gatti, we conclude that appellants have not appealed any products liability issue or any Sec. 1985 or Sec. 1986 issue. As to the ACJ appellees, we conclude that appellants have not appealed any Sec. 1985 or Sec. 1986 issue. Therefore, the only issues remaining before this court on appeal relate to appellants' Sec. 1983 claims against both Gatti and the ACJ appellees.
 
 B. STANDARD OF REVIEW
 
 23
 In that 1) there is nothing in the magistrate judge's report indicating that the ACJ defendants' motion to dismiss was treated as a motion for summary judgment and 2) the district court's order specifically adopted that report with its recommendation that this motion to dismiss be granted, the district court appears to have inadvertently entered summary judgment in favor of these defendants. Therefore, appellants' appeal as to them will be treated as an appeal from dismissal under Rule 12(b)(6). Only appellants' appeal as to Gatti appears from all the circumstances to be from a grant of summary judgment, and only it will be treated as such.
 
 
 24
 Because we treat the portion of this appeal involving the ACJ appellees as if it were from the dismissal of all claims against those appellees, the only pertinent facts on appeal are those alleged in the complaint. As to the claims against Gatti, however, which were disposed of by summary judgment in a procedurally correct manner, facts not alleged in the complaint but appearing in evidentiary sources provided in the record on appeal will be considered.[4]
 
 1. Dismissal under Rule 12(b)(6)
 
 25
 Our review of a district court's dismissal under Rule 12(b)(6) is plenary. Ditri v. Coldwell Banker Residential Affiliates, Inc., 954 F.2d 869, 871 (3d Cir.1992). A 12(b)(6) motion tests the sufficiency of the allegations contained in the complaint. See id. The question, then, is whether "the facts alleged in the complaint, even if true, fail to support the ... claim." Ransom v. Marrazzo, 848 F.2d 398, 401 (3d Cir.1988). The pleader is required to "set forth sufficient information to outline the elements of his claim or to permit inferences to be drawn that these elements exist." 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure Sec. 1357, at 340 (2d ed. 1990).
 
 
 26
 We apply the same standard the district court is required to apply. We therefore accept all factual allegations in the complaint as true and give the pleader the benefit of all reasonable inferences that can be fairly drawn therefrom. Wisniewski v. Johns-Manville Corp., 759 F.2d 271, 273 (3d Cir.1985). However, "we are not required to accept legal conclusions either alleged or inferred from the pleaded facts." Mescall v. Burrus, 603 F.2d 1266, 1269 (7th Cir.1979).
 
 2. Summary Judgment
 
 27
 Our review of a district court's grant of summary judgment also is plenary. Carlson v. Arnot-Ogden Memorial Hosp., 918 F.2d 411, 413 (3d Cir.1990). "On review the appellate court is required to apply the same test the district court should have utilized initially." Goodman v. Mead Johnson & Co., 534 F.2d 566, 573 (3d Cir.1976), cert. denied, 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977).
 
 
 28
 Rule 56(c) sets forth the test to be utilized by the district court. Summary judgment is appropriate only if there are no genuine issues of material fact and the relevant law entitles the moving party to judgment. Fed.R.Civ.P. 56(c); Carlson, 918 F.2d at 413. In addressing the question of the existence of a genuine issue of material fact, the Supreme Court has stated:
 
 
 29
 [T]he plain language of Rule 56(c) mandates the entry of summary judgment ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. [Where there is] a complete failure of proof concerning an essential element of the nonmoving party's case[, all other facts are rendered immaterial and t]he moving party is "entitled to summary judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.
 
 
 30
 Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Celotex also holds that in responding to a motion for summary judgment, Rule 56(e) requires that the non-moving party with the burden of proof on a dispositive issue at trial "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " Id. at 324, 106 S.Ct. at 2553.
 
 C. SUMMARY JUDGMENT IN FAVOR OF GATTI
 
 31
 Factual allegations supporting the plaintiffs' claims against Gatti appear in Counts III and V. The record also contains a copy of an affidavit submitted by Gatti with its motion. The affidavit averred that Gatti had a contract with a third party, Corrections Medical Systems, Inc., under which it provided off-site prescription filling services for physicians who treated prisoners at ACJ from January 1, 1989, to August 31, 1989; and that Gatti filled all prescriptions at its offices and had no contact with any prisoners in the ACJ. The complaint alleged that: Gatti owed plaintiffs some kind of duty with respect to their medical care and welfare; Gatti supplied Ferri with an inferior product for use in treating his lice infestation, which did not rid him of the infestation; and Gatti did not attempt to provide Ferri with any medical care for his heatstrokes.
 
 
 32
 Based on these allegations, plaintiffs claimed that Gatti violated Ferri's rights under Sec. 1983 and that Gatti conspired with the ACJ defendants to violate those rights. We address the Sec. 1983 claim first. The Supreme Court has set forth the two essential elements of a Sec. 1983 action: "(1) whether the conduct complained of was committed by a person acting under color of state law; and (2) whether this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." Parratt v. Taylor, 451 U.S. 527, 535, 101 S.Ct. 1908, 1912, 68 L.Ed.2d 420 (1981), overruled in part on other grounds by Daniels v. Williams, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986); see also Adickes v. S.H. Kress & Co., 398 U.S. 144, 150, 90 S.Ct. 1598, 1604, 26 L.Ed.2d 142 (1970).[5]
 
 
 33
 Although it is possible for a private party to violate an individual's Sec. 1983 rights, the individual alleging such a violation is not relieved of the obligation to establish that the private party acted under color of state law. "[T]he inquiry must be whether there is a sufficiently close nexus between the State and the challenged action [of the private party] so that the action of the latter may be fairly treated as that of the State itself." Jackson v. Metropolitan Edison Co., 419 U.S. 345, 351, 95 S.Ct. 449, 453, 42 L.Ed.2d 477 (1974).
 
 
 34
 Plaintiffs' Sec. 1983 claim against Gatti cannot withstand Gatti's summary judgment motion because they have failed to make a showing sufficient to establish the existence of the element of state action, the first element essential to their case. Had Gatti contracted directly with the ACJ or Allegheny County to provide off-site prescription filling services, an inference might have arisen that a sufficient connection existed between a state actor and Gatti to create a genuine issue of material fact on the element of state action. Gatti contracted, however, with a private, intermediary third party; it had no contact whatsoever with a state actor and was not one itself.
 
 
 35
 Thus, nothing in the complaint's factual allegations provides a basis for establishing the nexus necessary to show that Gatti acted (or failed to act) under color of state law with regard to Ferri, and plaintiffs have failed to go beyond their pleadings to designate facts that would create a genuine issue of material fact on this element. This complete failure of proof on an essential element of plaintiffs' Sec. 1983 claim entitles Gatti to summary judgment as a matter of law, Celotex, 477 U.S. at 322-23, 106 S.Ct. at 2552, and therefore the district court did not err in granting summary judgment in favor of Gatti on plaintiffs' Sec. 1983 claim.
 
 
 36
 Plaintiffs' Sec. 1983 claim against Gatti is also vulnerable to summary judgment on the second element articulated by the Court because they have failed to establish that Gatti's allegedly ineffective lice treatment deprived Ferri of any federal rights. This court has set forth the elements of a Due Process Clause violation based on the government's duty to provide pretrial detainees with appropriate medical care: Such a violation requires " 'acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.' " Boring v. Kozakiewicz, 833 F.2d 468, 471 (3d Cir.1987), cert. denied, 485 U.S. 991, 108 S.Ct. 1298, 99 L.Ed.2d 508 (1988) (quoting Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976)). This court further noted:
 
 
 37
 The Court emphasized that simple negligence was not the appropriate standard because "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner." [Estelle, 429 U.S. at 106[, 97 S.Ct. at 292]]. Medical malpractice may give rise to a tort claim in state court but not necessarily to a constitutional claim.
 
 
 38
 Id.
 
 
 39
 Therefore, to establish that Gatti's conduct deprived Ferri of any federal rights in a manner sufficient to withstand a motion for summary judgment, plaintiffs were obligated to designate facts supporting the existence of both deliberate indifference on the part of Gatti and a serious medical condition on the part of Ferri. The record does not show that the plaintiffs attempted, much less succeeded, in doing so. Therefore, as to the alleged lice infestation, plaintiffs have failed to establish a genuine issue of material fact as to the existence of both deliberate indifference and a serious medical condition. As to the alleged heatstrokes, they have failed to establish a genuine issue of material fact as to the existence of deliberate indifference. Thus, although plaintiffs' allegations, like the allegations of medical malpractice in Estelle and Boring, may give rise to a state tort claim, they do not rise to the level of federal constitutional violations.
 
 
 40
 This complete failure of proof on the second essential element of plaintiffs' Sec. 1983 claim against Gatti also entitles Gatti to summary judgment as a matter of law. Celotex, 477 U.S. at 322-23, 106 S.Ct. at 2552. Thus, the district court did not err in granting summary judgment in favor of Gatti on plaintiffs' Sec. 1983 claim.
 
 
 41
 As to the Sec. 1983 conspiracy claim against Gatti, appellants would be entitled to relief if they could show that Gatti and at least one of the state actors named as defendants in their complaint somehow reached an understanding to deny Ferri his rights under Sec. 1983. Adickes, 398 U.S. at 150, 152, 90 S.Ct. at 1604, 1605. Establishing the existence of this "understanding," however, is really nothing more than another way to show state action as required by Sec. 1983 when a private party is alleged to have violated that statute. See id. at 152, 90 S.Ct. at 1605. In the present case, just as there was a complete failure of proof on the nexus necessary to show state action in the context of plaintiffs' Sec. 1983 claim against Gatti, there is an analogous failure of proof on the understanding necessary to establish Gatti's participation in a Sec. 1983 conspiracy. This failure of proof entitles Gatti to summary judgment as a matter of law on plaintiffs' Sec. 1983 conspiracy claim. Celotex, 477 U.S. at 322-23, 106 S.Ct. at 2552. Thus, the district court did not err in granting summary judgment in favor of Gatti on this claim.
 
 
 42
 In summary, the district court did not err in granting summary judgment of all claims against Gatti, and its judgment will therefore be affirmed.
 
 
 43
 D. DISMISSAL OF CLAIMS AGAINST THE ACJ DEFENDANTS
 
 1. Counts I and II
 
 44
 The magistrate judge found that the plaintiffs complained of various conditions of confinement that were previously addressed by the United States District Court for the Western District of Pennsylvania in a series of decisions and orders in a class action suit brought on behalf of present and future ACJ inmates against certain ACJ defendants, in which the class requested injunctive relief from unconstitutional jail conditions. See, e.g., Owens-El v. Robinson (Owens-El I), 442 F.Supp. 1368 (W.D.Pa.1978); Owens-El v. Robinson (Owens-El II), 457 F.Supp. 984 (W.D.Pa.1978), aff'd in part, vacated in part by Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754 (3d Cir.1979); Inmates of Allegheny County Jail v. Wecht (Wecht I), 699 F.Supp. 1137 (W.D.Pa.1988), appeal dismissed in part, aff'd in part, 874 F.2d 147 (3d Cir.), cert. granted and judgment vacated by 493 U.S. 948, 110 S.Ct. 355, 107 L.Ed.2d 343 (1989); Inmates of the Allegheny County Jail v. Wecht (Wecht II), 901 F.2d 1191 (3d Cir.1990).[6]
 
 
 45
 A reading of these and other related decisions fails to verify that all of plaintiffs' allegations have already been addressed in these earlier decisions. Specifically, although the court discussed temperature extremes in the facility as contributing to a general finding of unconstitutional jail conditions, there is no discussion of inadequate ventilation[7] or of the combined effects of inadequate ventilation, temperature extremes, and the use within the facility of chemicals and machines that give off toxic fumes.[8] There is also no discussion of noise, lighting levels, or unsanitary food preparation and service procedures.
 
 
 46
 Although prior decisions do discuss the inadequacy of the law library and lack of access to it by female inmates housed in an annex to the jail, there is no discussion of hindered access to the library for male occupants of the jail itself or of problems in the maintenance of legal documents.
 
 
 47
 Conditions of confinement at the ACJ are the continuing concern of the district court. The court, however, cannot respond to new or different problems related to those conditions if it deems that, by addressing some conditions at the jail, all conditions have been addressed. Further, it may very well be that only through complaints such as the one under consideration will the court become apprised of the ACJ defendants' failure to comply with prior court orders on conditions that actually have already been addressed.
 
 
 48
 In Jordan v. Jones, 563 F.2d 148 (5th Cir.1977), an individual inmate brought a civil rights action claiming deprivations at a county jail. As in the present case, the district court dismissed on the ground that the claims asserted were similar to those involved in a class action previously decided. The court stated:
 
 
 49
 Some of [the inmate's] long litany of complaints are subsumed in the [class action] opinion and order, some are patently frivolous, but others fall in neither of these categories. The District Court could reopen the [class action] and refer [the inmate's] complaints to plaintiff counsel therein for them to handle as attorneys for the class, or could consolidate the present case with the [class action]. But it could not dismiss the present case on the basis that it presents issues which are similar to those in the class suit and could be presented in that suit. Also, one of the allegations is that jail officials are not complying with the [class action] order. This has to be dealt with in some manner other than dismissal.
 
 
 50
 Jordan, 563 F.2d at 148 (emphasis added).
 
 
 51
 Although the plaintiffs did not specifically allege in their complaint that jail and county officials were not complying with prior orders in the ACJ class action suit, they did raise matters in their complaint that are not patently frivolous or specifically subsumed in the prior class action opinions and orders. To this extent, they complained of conditions that should have been considered within the context of the class action suit or in a case consolidated with that suit, and the district court therefore erred in granting summary judgment on, and would have erred had it dismissed, those portions of plaintiffs' complaint dealing with such matters.
 
 
 52
 Further, to the extent that the court deciding the ACJ class action suit found no basis for money damages on claims raised in the consolidated class action against certain ACJ defendants, which may or may not include all jail and county officials named in the present case, that finding was based on a lack of evidence of wrongful intention or culpable negligence on the part of those particular ACJ defendants. Owens-El I, 442 F.Supp. at 1391. Because plaintiffs complain of matters not addressed in prior opinions and orders and against an apparently broader group of defendants, no such determination has been made as to jail and county officials with regard to the new matters pressed in the instant suit.
 
 
 53
 It may yet be, however, that Counts I and II of the complaint fail to state a claim upon which relief can be granted, but if so, it must be either because 1) the alleged conduct and conditions do not fall within the limitations period; or 2) the complaint fails to allege sufficient facts to support the essential elements of plaintiffs' claims or to permit inferences to be drawn that these elements exist. In the latter case, the necessary determination should be made upon remand with reference to the elements set forth in Wilson v. Seiter, --- U.S. ----, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991).[9]
 
 
 54
 Therefore, we will vacate the district court's summary judgment on appellants' Sec. 1983 claim based on the allegations contained in Counts I and II of their complaint and remand with instructions that, to the extent that each allegation in the complaint is not patently frivolous or specifically subsumed in existing orders stemming from the class action, the case should be treated in the context of the class action or consolidated with the class action as suggested in Jordan, 563 F.2d at 148.
 
 2. Count III
 
 55
 In this count, plaintiffs alleged two general conditions of confinement violations and two specific violations based on inadequate medical treatment. See Seiter, --- U.S. at ----, 111 S.Ct. at 2326 ("the medical care a prisoner receives is just as much a 'condition' of his confinement as the food he eats ... or the temperature he is subjected to in his cell"). Specifically, plaintiffs alleged that the ACJ defendants' deliberate indifference both caused Ferri's lice infestation and heatstrokes and prevented him from receiving effective treatment for those conditions.
 
 
 56
 As to claims by pretrial detainees of inadequate medical treatment, this court has stated:
 
 
 57
 Pretrial detainees are not within the ambit of the Eighth Amendment but are entitled to the protections of the Due Process clause. The Due Process clause requires the government to provide appropriate medical care. As the [Supreme] Court observed in [City of Revere v. Massachusetts General Hospital, 463 U.S. 239, 244[, 103 S.Ct. 2979, 2983, 77 L.Ed.2d 605] (1983) ], the Due Process rights of a pretrial detainee are "at least as great as the Eighth Amendment protections available to a convicted prisoner."
 
 
 58
 * * *
 
 
 59
 The protection afforded a sentenced prisoner under the Eighth Amendment was discussed in Estelle v. Gamble, 429 U.S. 97, 106[, 97 S.Ct. 285, 292, 50 L.Ed.2d 251] ... (1976). There the Court said: "Acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs" constitute cruel and unusual punishment under the Constitution.
 
 Boring, 833 F.2d at 471.[10]
 
 60
 The Supreme Court has recently set forth the standard for violations of the Eighth Amendment based on nonmedical conditions of confinement. Seiter, --- U.S. at ----, 111 S.Ct. at 2324, 2326-27. This standard would also apply to appellants as pretrial detainees through the Due Process Clause. The standard has an objective and a subjective component, just as the Estelle standard does. A plaintiff must prove that prison officials acted with deliberate indifference and that he or she suffered a deprivation of " 'the minimal civilized measure of life's necessities.' " Seiter, --- U.S. at ----, ----, 111 S.Ct. at 2324, 2326-27 (quoting Rhodes v. Chapman, 452 U.S. 337, 347, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981)).
 
 
 61
 a. Causing the Lice Infestation
 
 
 62
 Plaintiffs alleged that the jail and county officials' "deliberate indifference towards Ferri's care and welfare while he was housed in the DHU caused him to become infected with head and body lice as a result of providing him with dirty bed linen or mattresses." Although we recognize that the Eighth Amendment "does not mandate comfortable prisons," Rhodes, 452 U.S. at 349, 101 S.Ct. at 2400, we believe that inmates do have a right to be free of conditions that generate infestations of vermin. Plaintiffs have therefore stated a claim sufficient to withstand dismissal under the Seiter standard, provided the claim also withstands scrutiny under the applicable statute of limitations.
 
 
 63
 Plaintiffs filed their complaint on July 18, 1991. Therefore, if their claim that the ACJ defendants caused Ferri's infestation accrued before July 18, 1989, it is barred by the Pennsylvania two-year statute of limitations for personal injury actions. Wilson v. Garcia, 471 U.S. 261, 280, 105 S.Ct. 1938, 1949, 85 L.Ed.2d 254 (1985); 42 Pa.Con.Stat.Ann. Sec. 5524 (Supp.1993). Ferri's alleged infestation did in fact commence before that date: The remaining pertinent allegations show that Ferri suffered from the infestation for 70 days while in the DHU until his release on August 4, 1989; counting backward, this places the commencement date, and thus causation, prior to July 18. The claim is therefore time-barred.
 
 
 64
 Thus, although it was error to grant summary judgment on this claim, see supra section III.B., it would not have been error to dismiss it on statute of limitations grounds. Therefore, the district court's grant of summary judgment will be vacated and the claim remanded with instructions to dismiss it.
 
 
 65
 b. Causing the Heatstrokes
 
 
 66
 Plaintiffs alleged that "the unbearable temperatures and lack of ventilation brought about by the deliberate indifference of the Defendants caused Ferri to suffer eight (8) heat strokes" while he was in the DHU. It cannot be ascertained from the complaint whether any of the alleged heatstrokes occurred after July 18, 1989. If one or some of these heatstrokes did occur after this date, so too would the cause. Heatstroke is a serious medical condition. Acts or omissions of a deliberately indifferent nature that repeatedly cause a serious medical condition are more than sufficient to meet the Seiter standard. Therefore, the complaint would state a claim upon which relief can be granted if any of Ferri's heatstrokes occurred after July 18.
 
 
 67
 The district court's grant of summary judgment on this Sec. 1983 claim against the ACJ defendants will be vacated and the claim remanded for a determination of whether the statute of limitations bars it. If appellants' claim survives this scrutiny, they should be allowed to proceed on the merits.
 
 
 68
 c. Inadequate Treatment of the Lice Infestation
 
 
 69
 A prison's dispensing of vermin infested bedding, which causes that detainee's personal infestation, may establish a violation of a pretrial detainee's due process rights paralleling an Eighth Amendment violation against a convicted inmate. Ferri's alleged infestation in and of itself, however, fails to establish the existence of a serious medical need as required under Estelle and Boring. Therefore, plaintiffs fail to set forth sufficient information in their complaint as to this element of their claim.
 
 
 70
 Thus, although summary judgment on this portion of Count III should not have been granted, see supra section III.B., it would not have been error to have dismissed this claim pursuant to Rule 12(b)(6). The court's grant of summary judgment on this Sec. 1983 claim against the ACJ defendants will, therefore, be vacated and the claim remanded with instructions to dismiss it.
 
 
 71
 d. Lack of Treatment for Heatstroke
 
 
 72
 The same cannot be said for plaintiffs' Sec. 1983 claim related to the alleged lack of treatment for the eight heatstrokes Ferri allegedly suffered during the summer months of his confinement in the DHU. Heatstroke is considered a serious medical condition that requires treatment. The complaint alleged that jail and county officials were given notice of his condition and did nothing. Under the liberal pleading requirements of Rule 8(a), this is sufficient to establish the existence of deliberate indifference to the extent necessary to survive a motion to dismiss. Therefore, this portion of plaintiffs' Sec. 1983 claim will survive a motion to dismiss under Estelle and Boring and they should be allowed to proceed on the merits if on remand it survives the same statute of limitations scrutiny that the claim of causing the heatstrokes must undergo.
 
 3. Count IV
 
 73
 The magistrate judge found that all of the incidents alleged to support the Sec. 1983 claim contained in Count IV, which pertain to physical abuse and mistreatment of Kost during his confinement in the DHU, took place prior to July 18, 1989. Therefore, the magistrate judge concluded that Pennsylvania's two-year statute of limitations for personal injury, 42 Pa.Cons.Stat.Ann. Sec. 5524, barred the claim in its entirety. Appellants argue on appeal that this two-year limitations period should not apply and, instead, that Pennsylvania's four- or six-year statutes of limitations for contracts should govern because Kost was a federal pretrial detainee housed at the ACJ pursuant to a contract between the United States Marshal's Service and Allegheny County and his claims constitute violations of that contract. This argument actually raises two separate issues: We must first determine the appropriate limitations period for the Sec. 1983 claim alleged in Count IV; second, we must determine whether the plaintiffs' complaint made out a contract claim.
 
 
 74
 a. The Statute of Limitations on Sec. 1983 Claims
 
 
 75
 There is no federal statute of limitations for Sec. 1983 actions. Title 42 U.S.C.A. Sec. 1988 (West Supp.1993), however, contains a borrowing provision under which this gap shall be filled by reference to "the common law, as modified and changed by the constitution and statutes of the State wherein the court having jurisdiction of such civil ... cause is held." In Wilson v. Garcia, 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985), the Supreme Court determined after extensive discussion that all Sec. 1983 actions should be classified as claims for personal injury for the purpose of determining the limitations period under the applicable state law. Garcia, 471 U.S. at 272-76, 280, 105 S.Ct. at 1944-47, 1949.
 
 
 76
 In the face of this precedent, appellants' argument for application of the longer Pennsylvania limitations period for breach of contract is plainly frivolous. As already set forth, the Pennsylvania limitations period for personal injury actions is two years. The complaint was filed in 1991. All events related to Kost's confinement in the DHU occurred in 1988. The Count IV Sec. 1983 claim based on these events is therefore entirely time-barred. Thus, although it was error to have entered summary judgment on this claim, see supra section III.B., it would not have been error to have dismissed this portion of the complaint pursuant to the ACJ defendants' Rule 12(b)(6) motion. The district court's order granting summary judgment on plaintiffs' Count IV Sec. 1983 claim will therefore be vacated and the claim remanded with instructions to dismiss it.
 
 
 77
 b. The Contract Claim
 
 
 78
 As to the contract claim, appellants raise an issue on objections to the magistrate judge's report and on appeal that has no predicate in their complaint. Count IV of the complaint alleges that certain ACJ defendants, "by their acts of deliberate indifference towards the care and welfare of the Plaintiff George Kost infliced [sic] the following torts upon him." This allegation is then followed by a statement of the misconduct alleged of these defendants. Kost makes no allegation, explicit or implicit, that this activity constituted violations of any contract between United States and Allegheny County or that he had standing to sue under such a contract. The contract is neither attached as an exhibit to the complaint nor are its pertinent provisions incorporated into the complaint.
 
 
 79
 Moreover, in his comprehensive statement in the complaint of the legal bases for his claim, Kost alleges a denial of federal due process and other federal constitutional violations; statutory violations under Secs. 1983, 1985(2) and (3), and 1986; and breach of "the tort laws of the Commonwealth of Pennsylvania." Appellants do not here appeal the Secs. 1985 and 1986 claims or the state tort claim. We therefore can perceive no error in the magistrate judge's application of Pennsylvania's two-year statute of limitations for personal injury to the remaining Sec. 1983 claim. 42 Pa.Cons.Stat.Ann. Sec. 5524, Garcia, 471 U.S. at 272-76, 280, 105 S.Ct. at 1944-47, 1949. Count IV of the complaint fails to make out a contract claim, to which a longer limitations period would apply, because the factual allegations contained therein are simply not sufficient, even if true, to support such a claim. Ditri, 954 F.2d at 871; Ransom, 848 F.2d at 401.
 
 
 80
 Therefore, although it was error to grant summary judgment on this phase of the case, see section III.B., it would not have been error to dismiss it pursuant to the ACJ defendants' Rule 12(b)(6) motion for failure to state a claim. As already stated above, the district court's grant of summary judgment on Count IV of the complaint will thus be vacated and this portion of the case remanded with instructions to dismiss it.[11]
 
 4. Count V
 
 81
 The conspiracy alleged in Count V of the plaintiffs' complaint is a civil conspiracy to deprive them of civil rights guaranteed under Sec. 1983. They incorporated by reference all Sec. 1983 claims contained in Counts I through IV into this count alleging the Sec. 1983 conspiracy. The law governing civil conspiracy differs from that which governs criminal conspiracy. This court set forth and analyzed this difference in Wells v. Rockefeller, 728 F.2d 209 (3d Cir.1984), cert. denied, 471 U.S. 1107, 105 S.Ct. 2343, 85 L.Ed.2d 858 (1985):
 
 
 82
 There is a split of authority on when the limitations period for a civil conspiracy commences. Some courts apply the rule used in criminal cases, that is, the limitations period begins on the commission of the last overt act of the conspiracy.
 
 
 83
 Other jurisdictions, including those of this circuit, have applied the rule that the period runs from each overt act causing damage.
 
 
 84
 The rule generally adopted by the case law in this circuit provides greater certainty as to when a particular cause of action arises. For each act causing injury, a claimant must seek redress within the prescribed limitations period. Such a rule is consistent with the distinction between civil and criminal conspiracies. In the civil case, actual injury is the focal point, not the illegal agreement per se, as is true in the criminal context.
 
 
 85
 Adoption of the last overt act rule urged by [the plaintiff] would invite attempts to revive time-barred injuries by piggy-backing them onto actions occurring within the relevant period. No unfairness results in requiring diligence in seeking a remedy within the period measured from the date an injury occurs. We conclude that [the plaintiff's] conspiracy allegation would not preserve claims that the district court ruled were otherwise barred by the two-year statute of limitations.
 
 
 86
 Wells, 728 F.2d at 217 (emphasis added).
 
 
 87
 Appellants attempt to defeat this precedent by pointing to allegations of murder and attempted murder--allegations which would otherwise be disregarded as legal conclusions, Mescall v. Burrus, 603 F.2d 1266, 1269 (7th Cir.1979)--to dispense with a limitations period entirely. Under Garcia, however, even murder would be considered a personal injury under a claim of civil conspiracy for purposes of determining the applicable statute of limitations. Therefore, by synthesizing Wells, Garcia, and Pennsylvania's personal injury statute of limitations, plaintiffs were required to seek redress for each act of the alleged conspiracy causing injury within two years of its occurrence. Thus, in the present case, all claims based on acts occurring before July 18, 1989, are time-barred.
 
 
 88
 As noted above, plaintiffs incorporated by reference all Sec. 1983 claims set forth in Counts I through IV into this fifth count. Based on our preceding analysis of Counts I through IV and our determination that we are barred from considering any acts set forth in Count V that occurred before July 18, 1989, appellants are left with nothing more to support their conspiracy claim than the ongoing conditions of confinement alleged in Counts I and II and the conditions causing and the lack of treatment for Ferri's heatstrokes discussed in Count III,[12] if the claims based on these conditions survive scrutiny for dismissal on remand.
 
 
 89
 Under these circumstances, plaintiffs' conspiracy claim may appear redundant; however, should plaintiffs' remaining Sec. 1983 claims survive to trial and should a jury decide in favor of plaintiffs on some or all of these claims, the existence of a conspiracy to deprive them of rights guaranteed under Sec. 1983, if proved, may factor into the calculation of damages, especially in a case such as this where punitive damages have been requested. The district court's grant of summary judgment on plaintiffs' Sec. 1983 conspiracy claim against the ACJ appellees will, therefore, be reversed and the claim remanded for further proceedings consistent with this opinion.
 
 IV. CONCLUSION
 
 90
 In the instant case, appellants' appeal presents no issue involving Goldline. It presents no products liability issue involving Gatti. It presents no Sec. 1985 or Sec. 1986 issue involving any appellee.
 
 
 91
 As to the issues presented on appeal involving Gatti, the district court did not err in granting Gatti's motion for summary judgment on both plaintiffs' Sec. 1983 claim and their Sec. 1983 conspiracy claim. The judgment of the district court on these claims will therefore be affirmed.
 
 
 92
 As to issues on appeal involving the ACJ defendants, the district court's grant of summary judgment on plaintiffs' Sec. 1983 claims based on the allegations contained in Counts I and II of the complaint will be reversed and this phase of the case remanded for further proceedings consistent with this opinion. The district court's grant of summary judgment on plaintiffs' Count III claims alleging Ferri's lice infestation and inadequate treatment for it will be vacated and the claims remanded with instructions to dismiss them. The district court's grant of summary judgment on plaintiffs' Count III claims alleging Ferri's heatstrokes and lack of treatment will be reversed and these claims remanded for further proceedings consistent with this opinion.
 
 
 93
 Additionally, the district court's grant of summary judgment on Count IV of plaintiffs' complaint against the ACJ defendants will be vacated and this portion of the case remanded with instructions to dismiss it. Finally, the district court's grant of summary judgment on plaintiffs' Sec. 1983 conspiracy claim against the ACJ defendants will be reversed and this claim remanded for further proceedings consistent with this opinion.
 
 
 94
 The appellants will be assessed costs as to Goldline and Gatti. As to all other issues, each side will bear its own costs.
 
 
 
 [1]
 The district court exercised jurisdiction pursuant to 28 U.S.C.A. Secs. 1331, 1332, and 1343 (West Supp.1993). This court exercises jurisdiction pursuant to 28 U.S.C.A. Sec. 1291 (West Supp.1993)
 
 
 [2]
 Further, appellants state specifically in their reply brief that they never brought a Sec. 1985 or Sec. 1986 claim against Goldline
 
 
 [3]
 Appellants' only other mention of a products liability claim appears in their reply brief where they state, "Goldline was sued under a products liability restatement of tort action." Even if this statement were seen to raise squarely the issue of the district court's error in failing to recognize a products liability claim in their complaint, it would raise such an issue with respect to Goldline alone. More importantly, however, where an issue is raised for the first time in a reply brief, we deem it insufficiently preserved for review before this court. See Lunderstadt v. Colafella, 885 F.2d 66, 78 (3d Cir.1989)
 
 
 [4]
 We firmly reject appellants' attempt to augment the factual record relevant to their claims by the voluminous inclusion in their briefs on appeal of facts not alleged in their complaint or otherwise properly appearing in the record
 
 
 [5]
 Section 1983 provides in pertinent part:
 Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ..., subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity or other proper proceeding for redress....
 42 U.S.C.A. Sec. 1983.
 
 
 [6]
 Originally two cases had been filed against certain ACJ defendants: one by an inmate who challenged the constitutionality of jail conditions and sought money damages and equitable relief, the other by inmates as a class who sought a declaratory judgment that jail conditions were unconstitutional. The cases were consolidated and certified as a class action. Owens-El I, 442 F.Supp. at 1372. Eventually, money damages were denied on the issues originally raised by the individual inmate because no evidence was presented to permit the necessary predicate finding of wrongful intention or culpable negligence on the part of the ACJ defendants. Id. at 1391
 
 
 [7]
 Ferri filed a prior action challenging the inadequate ventilation in the DHU. In an unreported decision, the district court dismissed the action because the complained of condition was previously addressed in Wecht I. Wecht I, however, does not discuss ventilation in the jail as a whole or in the DHU, and further, appellants' present complaint indicates that the DHU was not sealed until 1989, well after Wecht I was decided. This court affirmed the district court without opinion. Ferri v. Kozakiewicz, 919 F.2d 134 (3d Cir.1990)
 
 
 [8]
 It seems, in fact, that some of the problems complained of are "second generation" problems caused by solutions to the original problems addressed by the district court. For example, the court originally found that there was a build-up of filth in many areas of the jail and that "the walls, floors, and steel bars were dirty with a kind of greasy dirt, such as one might find in a dirty kitchen." Owens-El I, 442 F.Supp. at 1376-77. Testimony was introduced "that a steam cleaning apparatus could be used effectively to clean ... the greasy dirt." Id. at 1377. Although the complaint is not explicit as to why gasoline operated combustion engines are used within the jail (giving off exhaust fumes), appellants indicate that these machines are used to operate steam jennies to clean various parts of the jail on a bi-weekly basis
 
 
 [9]
 Seiter mandates proof of deliberate indifference and a sufficiently serious deprivation, i.e., one that denies "the minimal civilized measure of life's necessities." --- U.S. at ----, ----, 111 S.Ct. at 2325, 2327 (quoting Rhodes v. Chapman, 452 U.S. 337, 347, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981)). This standard is discussed further, infra, in section III.C.2. of this opinion
 
 
 [10]
 Pretrial detainees, such as the appellants in this case, are entitled to at least as much protection as convicted prisoners, so the protections of the Eighth Amendment would seem to establish a floor of sorts. It appears that no determination has as yet been made regarding how much more protection unconvicted prisoners should receive. The appellants, however, have not raised this issue, and therefore we do not address it
 
 
 [11]
 In a footnote, appellants state, "With respect to the argument that the statute of limitations governing contracts applies to the torts [against Kost] cited in Count IV, Ferri argues he is entitled to the same considerations regarding the torts set forth as committed against him in Counts I, II and III." We agree. We therefore conclude, for the same reasons set forth above, that Ferri's Sec. 1983 claims are governed by Pennsylvania's two-year personal injury statute of limitations pursuant to Garcia, 471 U.S. at 272-76, 280, 105 S.Ct. at 1944-47, 1949, and that appellants' complaint fails to make out a contract claim on behalf of Ferri
 
 
 [12]
 See infra subsections III.D.1, III.D.2