**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-4121
_____

SAM PERLMUTTER, an individual,
                                        Appellant

v.

*RUSSELL HOBBS, INC., a Delaware corporation, f/k/a Salton, Inc.;
HARBINGER CAPITAL PARTNERS, LLC, a New York corporation;
DOES 1-100, inclusive

*Per Clerk Order of 11/17/10.
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE
(D.C. Civil No. 1-09-cv-00690)
District Judge:  Honorable Gregory M. Sleet
_____

Submitted Under Third Circuit LAR 34.1(a)
September 13, 2011
_____

Before: RENDELL, JORDAN, and BARRY, *Circuit Judges*

(Opinion Filed: September 20, 2011)
_____

OPINION
_____

BARRY, *Circuit Judge*

In this contract dispute, the District Court dismissed Sam Perlmutter's claim for breach of contract, as well as two other related claims. The Court also denied his request to file a second amended complaint. We will affirm.

## I.  INTRODUCTION[1]

On July 1, 1999, Perlmutter and Salton, Inc. ("Salton"),[2] entered into a contract ("Original Agreement") in which they defined the terms by which Salton could purchase from Perlmutter certain trademarks and associated goodwill related to George Foreman. Salton agreed, among other things, to pay Perlmutter $5.5 million in four equal installments of $1,375,000, to be paid in July of 2000, 2001, 2002, and 2003. Salton purchased the property at issue and made the first three payments, but it defaulted on the fourth. In an agreement dated July 1, 2003 ("2003 Amendment"), Perlmutter and Salton amended their Original Agreement as to the fourth installment, so that Salton could make the payment in shares of its stock, rather than cash. The Original Agreement and 2003 Amendment contained provisions stating that they could be modified only in writing.

Section 3 of the 2003 Amendment contains the provisions that are at the center of

_____

[1] We assume, as we must, that the facts alleged in the Amended Complaint are true, and we also consider the contracts at issue, which are "integral to or explicitly relied upon in the complaint." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (internal quotation marks and emphasis omitted).

[2] After the parties entered into the contracts at issue in this case, Russell Hobbs, Inc., purchased Salton, Inc. Russell Hobbs, Inc., then merged with Harbinger Capital

the parties' arguments. In Section 3(a), the parties agreed that:

> Perlmutter understands that the Shares have not been and will not be registered under the [Securities Act of 1933]. . . . The Shares shall bear the following legend:
>
> THE SHARES REPRESENTED BY THIS CERTIFICATE HAVE BEEN ACQUIRED FOR INVESTMENT AND HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933 OR ANY APPLICABLE STATE SECURITIES LAWS. SUCH SHARES MAY NOT BE SOLD OR TRANSFERRED IN THE ABSENCE OF SUCH REGISTRATIONS OR EXEMPTIONS THEREFROM UNDER SAID ACT OR LAWS.

(Appendix at A 77.)

Section 3(d) addressed Perlmutter's expected profit from these shares. The parties defined a "Measuring Period" of between one and three years after the shares were delivered to Perlmutter. At the end of the Measuring Period, if the sum of (1) the proceeds of Perlmutter's sales of shares during the Measuring Period and (2) the value of any shares he still had at the end of the Measuring Period were less than $1,375,000, the parties agreed that "the Company [Salton] shall pay to Perlmutter in cash (or, at the election of the Company in accordance with this Section 3, in additional shares of Common Stock) an amount equal to the difference ["Shortfall Payment"]." (*Id.* at A 78.)

Salton issued shares in lieu of the fourth cash installment ("Original Shares"), and Perlmutter began selling them in December of 2005. He sold the Original Shares for $362,436.29, which left a shortfall of $1,012,563.71 at the end of the Measuring Period.

Partners, LLC. Because the contracts were with Salton, we will refer to the defendants as "Salton."

3

On April 26, 2006, in accordance with Section 3(d), Salton made the Shortfall Payment by issuing additional shares of stock ("Shortfall Shares") to Perlmutter. There is no dispute that the Shortfall Shares were worth $1,012,563.71 at the time they were issued, but Perlmutter could not sell them right away because the Shortfall Shares included "a legend indicating that the stock was not registered with the SEC and that rendered the shares restricted, i.e., unable to be traded or sold for an additional holding period." (*Id.* at A 89.)

Perlmutter "repeatedly" asked Salton to remove the restriction, and Salton allegedly agreed in 2007 "to register the [Shortfall Shares] thereby giving [them] the same effect as stock freely tradable." (*Id.* at A 90.) Salton did not, however, register the shares, and a period of sales restrictions commenced for the Shortfall Shares. During this time, the value of the Shortfall Shares precipitously declined. Perlmutter sold some of the Shortfall Shares after one year and sold the remainder after two additional years. He sold the Shortfall Shares shares for significantly less than $1,012,563.71 and claims that Salton owes him the difference.[3]

## II.     JURISDICTION AND STANDARD OF REVIEW

The District Court had jurisdiction pursuant to 28 U.S.C. § 1332, and we have

---

[3] Perlmutter contends that there is a shortfall of $902,000, but he alleges that he earned $170,000 from the Shortfall Shares that he sold after the first year, and that he earned $303,000 for the Shortfall Shares that he sold after two more years. The Shortfall Shares were intended to be worth $1,012,563.71, and if he made a total of $473,000 from selling the Shortfall Shares, it is unclear why he claims that he is left with damages of

4

jurisdiction pursuant to 28 U.S.C. § 1291. "Our standard of review of a district court's dismissal under Federal Rule of Civil Procedure 12(b)(6) is plenary." *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 163 (3d Cir. 2010). We review the Court's denial of leave to file a further amended complaint for abuse of discretion. *Ramsgate Ct. Townhome Ass'n v. W. Chester Borough*, 313 F.3d 157, 161 (3d Cir. 2002).

## III. ANALYSIS

Perlmutter brought claims against Salton for breach of contract, breach of the implied covenant of good faith and fair dealing, and negligent misrepresentation. We will discuss each claim in turn, and then we will address his argument that the District Court abused its discretion in denying an opportunity for him to file another amended complaint.

### A. Breach of Contract

To state a claim for breach of contract under Delaware law,[4] Perlmutter must show "first, the existence of the contract, whether express or implied; second, the breach of an obligation imposed by that contract; and third, the resultant damage to the plaintiff." *VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 612 (Del. 2003). "[A] valid contract exists when (1) the parties intended that the contract would bind them, (2) the terms of the contract are sufficiently definite, and (3) the parties exchange legal consideration." *Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153, 1158 (Del. 2010).

---

$902,000. It appears that he neglected to account for the money he made selling the Original Shares, but we need not resolve this issue.

### 1.    Restricted Shares

Perlmutter's claim for breach of contract is premised on his argument that the Shortfall Shares should not have been restricted, and that Salton promised after the parties executed the 2003 Amendment to remove the restrictions or register the shares but failed to do so. Perlmutter specifically contends that Salton breached the Original Agreement and 2003 Amendment by

> (1) Failing to pay the Shortfall Amount due under the [2003] Amendment in the cash equivalent of tradable and sellable stock certificates in a timely manner; (2) Failing to take all such further reasonable action as may be necessary or reasonably appropriate in order to consummate the transactions contemplated . . . ; (3) Failing to take reasonable efforts to implement the provisions of the Agreement . . . ; and (4) Upon providing Plaintiff with stock [the Shortfall Shares] which contained the wrongful legend, failing to remove the wrongful legend and or [sic] to register the stock which would in effect make it freely tradable as to fully compensate Plaintiff under the [2003] Amendment and [Original] Agreement, despite Plaintiff's repeated demands for performance and Defendant's SALTON and HARBINGER [sic] assurances and representations that they would in fact perform.

(Appendix at A 94.)

The District Court dismissed Perlmutter's claims for breach of contract because it found that under Section 3(d), the Shortfall Shares were to be issued "in accordance with . . . Section 3" of the 2003 Amendment, and Section 3(a) provided that the shares would be restricted and bear the legend to which Perlmutter objects.[5] We agree that the

---

[4] There is no dispute that the contracts at issue are governed by Delaware law.

[5] Perlmutter previously admitted that "the agreement did not prohibit the issuance of stock with a legend" but argued before the District Court that "it was the intent of the parties to transfer assets with a final cash value of $1,375,000." (Perlmutter Response to Motion to Dismiss, District Court Docket Entry No. 28 ("MTD Response") at 8.)

restrictions and legend on the Shortfall Shares were "in accordance with . . . Section 3" of the 2003 Amendment and that Salton thus did not breach the 2003 Amendment when it issued the Shortfall Shares.

To the extent that Perlmutter contends that Salton's alleged promises in 2007 – to register the Shortfall Shares or remove the restrictions from them – were *new* contracts that Salton breached, his claim appears to rely on a gratuitous promise without consideration, which is not an enforceable contract, and, if attempting to state a claim for promissory estoppel, will inevitably fail for lack of any detrimental reliance or change of position on Perlmutter's part.

### 2. The Application of Section 3(d) to the Shortfall Shares

Perlmutter contends for the first time on appeal that, if Section 3(a) applies to the Shortfall Shares, Section 3(d) should also apply, and thus that the Shortfall Shares should be subject to another Shortfall Payment at the end of a Measuring Period for the Shortfall Shares. Under this theory, the parties will be engaged in a never-ending cycle of Measuring Periods and Shortfall Payments until Perlmutter receives, as cash in hand, the fourth payment of $1,375,000. Salton contends that 2003 Amendment does not provide for a Shortfall Payment for the Shortfall Shares.

We will not address this issue because Perlmutter did not raise it in the District Court, and he has therefore waived it. *Del. Nation v. Pennsylvania*, 446 F.3d 410, 416 (3d Cir. 2006) ("Absent exceptional circumstances, this Court will not consider issues raised

7

for the first time on appeal."). He did not assert this theory in his Amended Complaint; he referenced the concept in Section 3(d) in the Amended Complaint, but he did not claim that Salton breached the 2003 Amendment by failing to apply Section 3(d) *to the Shortfall Shares*. (*See* Appendix at A 88-89, A 94.) He concedes that his "focus in the First Amended Complaint was on Salton's failure to register the Additional Shares [the Shortfall Shares] so it [sic] could be sold at the then existing market price on which the number of shares issued was based, and Salton's misrepresentations that it would do so." (Appellant's Br. at 16.)

Perlmutter nonetheless argues that he alleged that "'Defendants SALTON and HARBINGER owed a duty in dispensing said additional shares of Common Stock [the Shortfall Shares] so as to fully compensate Plaintiff pursuant to terms of the written agreements'" (Reply Br. at 6 (quoting Appendix at A 93) (emphasis removed)), but again there was no mention of Section 3(d) in this allegation. He contends that the Amended Complaint "further alleged that Defendant had breached the contract by, <u>inter alia</u>, 'failing to pay the Shortfall amount due under the Amendment….'" (Appellant's Br. at 6 (quoting Appendix at A 94).) But the full allegation in the Amended Complaint was that Salton "fail[ed] to pay the Shortfall Amount due under the Amendment *in the cash equivalent of tradable and sellable stock certificates* in a timely manner." (Appendix at A 94.) Again, Perlmutter focused in the Amended Complaint on the alleged defects in the

8

restricted Shortfall Shares, not whether Section 3(d) applied to them.[6]

We agree with the District Court that Section 3(a) applied to the Shortfall Shares, and we will not address Perlmutter's argument regarding the application of Section 3(d) to the Shortfall Shares because he waived that argument. We will therefore affirm the Court's dismissal of his claims for breach of contract.

### B.    Breach of the Implied Covenant of Good Faith and Fair Dealing and Negligent Misrepresentation

Perlmutter also asserted claims for breach of the implied covenant of good faith and fair dealing, as well as negligent misrepresentation. In his initial brief on appeal, he only briefly mentions these claims:

> Salton subsequently, on multiple occasions, admitted that the additional shares should have in fact been registered. Salton misrepresented that they would be, and then, in extreme bad faith, failed to do so, while the stock continued to fall. These points are clearly alleged in the [Amended Complaint] and for these reasons alone the claims for "bad faith breach" and misrepresentation should also have survived the motion to dismiss.

(Appellant's Br. at 12.) Salton contends that Perlmutter's cursory treatment of these claims before us is insufficient and that he has therefore waived them on appeal. Perlmutter concedes that he cannot state a claim for negligent misrepresentation, and we will not address that claim further. (*See* Reply Br. at 9 n.4.) We will turn to his claim for breach of the implied covenant of good faith and fair dealing.

"[A]ppellants are required to set forth the issues raised on appeal and to present an

---

[6] As we discuss below, he also did not argue that Section 3(d) applied to the Shortfall Shares in his response to the motion to dismiss.

9

argument in support of those issues in their opening brief." *Kost v. Kozakiewicz*, 1 F.3d 176, 182 (3d Cir. 1993). "It is well settled that if an appellant fails to comply with these requirements on a particular issue, the appellant normally has abandoned and waived that issue on appeal and it need not be addressed by the court of appeals." *Id.* In his opening brief, Perlmutter failed to adequately raise his claim for breach of the implied covenant of good faith and fair dealing. His brief mention of that claim does not meet the standard we stated in *Kost*.

Even if he had properly raised that issue, however, we would affirm. Under Delaware law, "one generally cannot base a claim for breach of the implied covenant on conduct authorized by the terms of the agreement." *Dunlap v. State Farm Fire & Cas. Co.*, 878 A.2d 434, 441 (Del. 2005). The District Court dismissed Perlmutter's claim for breach of the implied covenant of good faith and fair dealing because it concluded that "express contractual language governs the matter at hand," that is, the 2003 Amendment "contains language notifying Perlmutter that the stock contains a legend stating that it will be unregistered." (Appendix at A 9.) For the reasons discussed above, we agree that the 2003 Amendment addresses this issue, and the Court correctly dismissed this claim.

### C. Further Amendments to the Complaint

In Perlmutter's response to the motion to dismiss, he briefly requested leave to amend his complaint three times: (1) "[e]ven though Plaintiff believes that the Complaint as it stands meets Federal standards, Plaintiff alternatively requests leave to amend,"

10

(MTD Response at 1); (2) "to the extent that the Court finds greater specificity is warranted, Plaintiff should be afforded leave to amend," (*id.*); and (3) after listing standards for amending a complaint, stating "[t]o the extent the Court finds it possible for Plaintiff to cure defects in his complaint, Plaintiff respectfully requests leave to amend," (*id.* at 16).

Perlmutter did not explain to the District Court what defects he would cure in an additional amended complaint or make any argument as to why the Court should give him another opportunity to amend his complaint. Perlmutter instead expected the *Court* to determine how he could correct any defects in the Amended Complaint. Under these circumstances, the Court concluded "that granting leave to amend the complaint in this case would be futile because Perlmutter has already amended the complaint once, and the deficiencies of the amended complaint appear to be incurable." (Appendix at A 12.)

The brevity of Perlmutter's requests are similar to that in *Ramsgate Court*, in which we noted that the plaintiff made only a brief, one-sentence request to amend the complaint, "never filed a motion to amend," and did not "provide the district court with a proposed amended complaint. As a consequence, the court had nothing upon which to exercise its discretion." 313 F.3d at 161; *see also Ranke v. Sanofi-Synthelabo Inc.*, 436 F.3d 197, 206 (3d Cir. 2006). Perlmutter contends that he was not required to file a proposed amended complaint, but even if that was the case, he nonetheless failed to articulate to the District Court *any* reason that it should have given him another bite at the

11

apple.

Perlmutter claims on appeal that in a further amended pleading, he "would allege that Defendants *either* failed to register the stock *or* pay the shortfall *again* thereby failing to repay the debt in full consistent with the parties' intent and dominant purpose of the contract." (Appellant's Br. at 16.) In other words, he contends that even if he could not make a successful claim based on the restrictions on the Shortfall Shares, he would claim that Section 3(d) should apply to the Shortfall Shares. Perlmutter did not, however, make this argument at any time to the District Court. Because he did not raise this issue before the District Court, it is waived, and we will not address it.

Based on the arguments Perlmutter presented – or did not present – to the District Court, the Court did not abuse its discretion in denying his perfunctory requests to file another amended complaint.

## IV. CONCLUSION

We will affirm the judgment of the District Court.