**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-2142
_____

MAHMUT UZUN,
                                        Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,
                                        Respondent

_____

On a Petition For Review of an Order
of the Board of Immigration Appeals
(Agency No. A087-391-974)
Immigration Judge: Dorothy Harbeck

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
August 14, 2013

Before: VANASKIE, SCIRICA and COWEN, <u>Circuit</u> <u>Judges</u>

(Opinion filed: August 14, 2013)
_____

OPINION
_____


PER CURIAM

        Mahmut Uzun ("Uzun") petitions for review of the Board of Immigration

Appeals' final order of removal.  For the reasons that follow, we will deny the petition for

review.

Uzun, a native and citizen of Turkey, was admitted to the United States as a non-immigrant F-1 student in October, 2005 with authorization to remain for a period of six months. He subsequently received extensions permitting him to remain in the United States until May 15, 2008. On March 30, 2010, the Department of Homeland Security issued a Notice to Appear, charging that Uzun was removable under Immigration & Nationality Act § 237(a)(1)(C)(i) and (B), 8 U.S.C. § 1227(a)(1)(C)(i) and (B), for having failed to maintain his student status, and as an alien who remained in the United States for a time longer than permitted. He does not contest that he is removable. On September 15, 2010, Uzun applied for asylum, withholding of removal, and protection under the Convention Against Torture, claiming a fear of persecution on the basis of his secularism in an allegedly increasingly Islamic Turkey.

On January 5, 2011, Uzun appeared for his removal hearing. He testified as follows. He was born in 1980 in Ankara. His parents and eldest brother continue to live in Turkey; his other brother and sister are here in the United States. He began experiencing problems in 1995 while attending high school. A friend enrolled him in a nationalist, or religious extremist, group without his knowledge or consent, and thereafter he was pressured to attend meetings. He attended two meetings, fearing punishment by the group for failing to obey its rules. In 1997, he was forced to act as a bodyguard for one of the party leaders at a party meeting. In 1998, his older brother was caught having a meal with a friend in a cafeteria during the month of Ramadan. After the two men left the cafeteria, they were followed by Islamic fundamentalists and attacked. His brother's friend was stabbed many times and his brother was beaten. The friend succumbed to his

2

injuries a few days later. The story was picked up by the media and widely reported throughout Turkey. Uzun, however, was not present during this incident.

In 2000, Uzun graduated from high school and enrolled in a university. Many extremists were in attendance at the university. On one occasion he was threatened and humiliated because he wore a "goatee," which this group told him was not accepted in the religion because it is not a full beard. Another time he was harassed while holding his girlfriend's hand and warned that what he was doing was prohibited outside of marriage. Then, while waiting at a bus stop near the university, five members of the nationalist group surrounded him and beat him up; he was not seriously injured but he required a week of rest and recuperation.

In 2003, Uzun moved in with a friend after his family moved away. He and his friend were harassed and threatened for drinking alcohol in the privacy of their apartment. Eventually, they were evicted. They moved to another apartment closer to the university, but were harassed by their neighbors when female students would come over to study. They were only able to stay in the apartment because they stopped having female visitors. Uzun decided to study in the United States to improve his English, get a Master's Degree in Engineering, and get away from the problems in Turkey. He initially came to the U.S. on a student visa in 2004, and then returned to Turkey after four months. He subsequently departed Turkey for good in October, 2005.

Uzun testified that he is afraid that, if he is removed to Turkey, he will be targeted by Islamic fundamentalists. He believes that the AK party, the regime currently in power, is seeking to impose Sharia law. Uzun cannot live in this environment. In

support of his claim, his brother, who was beaten in Turkey, and his former roommate from Turkey, both testified. His brother confirmed the attack where he was beaten and his friend was stabbed and killed. Uzun also submitted news articles substantiating the attack, and dozens of background documents addressing country conditions in Turkey, including the 2009 State Department Report on Human Rights Practices.

The Immigration Judge denied Uzun's application for relief and granted him voluntary departure, with an alternate order of removal. The IJ found Uzun credible, but held that his asylum application was untimely, and that he had not met his burden of proof with respect to withholding of removal and CAT relief. Preliminarily, the IJ recited the names of all of Uzun's media articles, and announced that only one – from Wikinews – would not be afforded evidentiary weight. The IJ then turned to the withholding of removal claim and determined that what happened to Uzun constituted harassment or discrimination, not persecution. The IJ concluded that what Uzun experienced at the hands of Islamists or nationalists did not rise to the level of the severe harm required to constitute persecution. The IJ further determined that Uzun did not establish a well-founded fear of persecution in Turkey, and thus necessarily a clear probability of persecution. The IJ determined that Uzun's fear that Turkey will become an Islamic state ruled by Sharia law was mere speculation that lacked support in the record. There was no evidence that Uzun would be singled out for persecution, or evidence that the mistreatment of secularists in Turkey is pervasive. The IJ noted Uzun's documents reporting, for example, on Prime Minister Erdogan's fundamentalist AK political party, but observed that Erdogan became Prime Minister in 2002 and had yet to force Sharia

4

law on Turkey. The IJ noted media reports that the Turkish government continues to enforce the head scarf ban in public buildings, and, that, according to the State Department, the Turkish Constitution protects religious freedom. As for the other articles Uzun submitted discussing topics such as the Israeli blockade of Gaza and the Turkish Gaza-bound aid ship that was attacked, and Turkey's treatment of conscientious objectors, the IJ found that these articles were not directly probative of Turkish secularism. The IJ also noted that Uzun's parents and eldest brother remain in Turkey and have not been harmed, and Uzun voluntarily returned to Turkey in 2004 and was not harmed. Last, the IJ concluded that Uzun had not shown that it was more likely than not that he would be tortured in Turkey.

Uzun timely appealed to the Board of Immigration Appeals. On March 29, 2013, the Board dismissed Uzun's appeal and adopted and affirmed the IJ's decision. The Board agreed with the IJ that Uzun failed to demonstrate that the harm he suffered, even if the incidents were considered in the aggregate, rose to the level of persecution. The Board also agreed that there was insufficient evidence to demonstrate that Uzun has a well-founded fear of persecution, either because he will be singled out for persecution or because there is a pattern or practice in Turkey of persecution of secularists. In reaching this conclusion, the Board took administrative notice of, and considered, the State Department's 2010 Human Rights Report, which Uzun submitted for the first time on appeal. The Board also affirmed the IJ's denial of CAT relief.

Uzun has timely petitioned for review of the Board's decision. We have jurisdiction under 8 U.S.C. § 1252(a)(1), (b)(1). Uzun contends in his brief that the

5

agency erred by limiting its past persecution analysis to only five specific instances of harm, and that the agency's determination that he failed to demonstrate a clear probability of persecution in Turkey is not supported by substantial evidence.[1]

We will deny the petition for review. Where the Board determines, as it did here, that the IJ's factual findings are not clearly erroneous and expressly adopts the IJ's legal conclusions, we review the decisions of both the IJ and the Board. See Chen v. Ashcroft, 376 F.3d 215, 222 (3d Cir. 2004). The agency's "findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). See also Immigration & Naturalization Serv. v. Elias-Zacarias, 502 U.S. 478, 481 (1992).

An alien may qualify for withholding of removal by demonstrating that he has suffered persecution in the past, in which case a rebuttable presumption of future persecution applies. See Garcia v. Att'y Gen. of U.S., 665 F.3d 496, 505 (3d Cir. 2011). See also 8 U.S.C. § 1231(b)(3)(C) ("In determining whether an alien has demonstrated that the alien's life or freedom would be threatened … the trier of fact shall determine whether the alien has sustained the alien's burden of proof" in the manner described in the asylum statute). If the rebuttable presumption of future persecution does not apply, an alien may meet his burden by showing a "clear probability" that his life or freedom would be threatened on account of a protected ground in the proposed country of removal. Immigration & Naturalization Serv. v. Stevic, 467 U.S. 407 (1984). Clear

---

[1] Uzun does not challenge the agency's CAT determination or determination that his asylum application was untimely filed. These issues are waived. See Kost v. Kozakiewicz, 1 F.3d 176, 182 (3d Cir. 1993).

probability is defined to mean that it is more likely than not that an alien would be subject to persecution. See id. at 429-30. And, as with any claim of persecution, the acts must be committed by the government or forces the government is either unable or unwilling to control. See Garcia, 665 F.3d at 505.

Persecution is defined as "threats to life, confinement, torture, and economic restrictions so severe that they constitute a threat to life or freedom." Kibinda v. Att'y Gen. of U.S., 477 F.3d 113, 119 (3d Cir. 2007) (quoting Fatin v. Immigration & Naturalization Serv., 12 F.3d 1233, 1240 (3d Cir. 1993)). Persecution refers only to "severe" conduct and "does not encompass all treatment our society regards as unfair, unjust or even unlawful or unconstitutional." Id. Here, the agency reasonably determined that Uzun's two verbal encounters in high school, the beating at the bus stop where he was not seriously injured, the eviction, and the subsequent harassment when he and his college roommate moved to a new apartment, considered in the aggregate, were not severe enough to constitute persecution. Contrary to Uzun's assertions, the two incidents of verbal harassment at school, the incidents of discrimination by landlords and intimidation by neighbors, and a minor physical altercation, do not compel the conclusion that he suffered persecution in Turkey. See Lie v. Ashcroft, 396 F.3d 530, 536 (3d Cir. 2005). Uzun argues that the agency overlooked his testimony that a friend enrolled him in a nationalist party without his consent and that he was forced to serve as a bodyguard on one occasion, see Petitioner's Brief, at 17-18, but, even with this additional testimony, his evidence of persecution is insufficient. We conclude that substantial evidence

7

supports the agency's determination that what happened to Uzun was not severe enough to constitute persecution. Fatin, 12 F.3d at 1240.

In the absence of evidence of past persecution, Uzun had to submit evidence of country conditions in Turkey showing a clear probability of future persecution by Islamic fundamentalists intent on enforcing Sharia law. Uzun submitted numerous articles discussing current events in Turkey, and State Department reports, but this documentary evidence for the most part contradicts his claim that Turkey is no longer a secular government. On the contrary, the State Department reports show that Turkey remains a secular government, and that religious freedom is protected. While some of the articles show that current President Abdullah Gul has roots in political Islam, and posit that this constitutes a threat to Turkish secularism, this is speculation and not proof of current country conditions. Other articles, for example, those concerning the Turkish Gaza-bound aid ship that was attacked, also are insufficient to prove that Turkey is no longer a secular government. Several of Uzun's articles concerned general human rights abuses in Turkey and have no apparent relevance to the issue of Turkish secularism.

In addition, the agency, in considering the issue of future persecution, properly noted the relevance of Uzun's testimony that he was not harmed when he returned to Turkey in 2004, and that his parents and eldest brother remain in Turkey unharmed. Lie, 396 F.3d at 537. Further, we note that the controlling regulation provides that:

> In evaluating whether it is more likely than not that the applicant's life or freedom would be threatened in a particular country on account of race, religion, nationality, membership in a particular social group, or political opinion, the [agency] shall not require the applicant to provide evidence that he or she would be singled out individually for such persecution if: (i)

8

>The applicant establishes that in that country there is a pattern or practice of persecution of a group of persons similarly situated to the applicant on account of race, religion, nationality, membership in a particular social group.

8 C.F.R. § 1208.16(b)(2). Uzun argues that the agency failed to properly credit what happened to his brother in determining the pattern or practice issue, citing Dia v. Ashcroft, 353 F.3d 228, 259 (3d Cir. 2003) (violence directed at alien's family members supports claim of persecution). See Petitioner's Brief, at 20. Although we agree that this type of harm is relevant, in Lie, 396 F.3d at 537, we held that, "to constitute a pattern or practice, the persecution of the group must be "systemic, pervasive, or organized." Uzun's evidence is insufficient to meet this standard, because he failed to show that the harm perpetrated on his brother was committed by the government or forces the government is either unable or unwilling to control. See id. Consequently, the record does not compel the conclusion that Uzun established a clear probability that his life or freedom would be threatened in Turkey on account of his secularism.[2]

For the foregoing reasons, we will deny the petition for review.

---

[2] We reject as meritless Uzun's argument that the Board should have considered the State Department's 2010 International Religious Freedom Report even though he did not submit this report in support of his case. See Petitioner's Brief, at 22-24. It is the applicant's burden to prove his case. 8 C.F.R. § 1208.16(b)(1). As noted by the Attorney General, "[i]t would be odd indeed if Mr. Uzun could request [that] the Board consider one report on appeal [the 2010 Human Rights Report], have that report considered, and then on [a] petition for review argue [that] the Board failed to consider other reports he chose not to submit." See Appellee's Brief, at 22 n.6.