**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-3158
_____

NANCY DINOTE,
                              Appellant

v.

CARL C. DANBERG, Commissioner of Department of Correction;
MICHAEL DELOY; REBECCA MCBRIDE; G.R. JOHNSON; PATRICK RYAN
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE
(D.C. Civil No. 1-12-cv-00377)
District Judge:  Honorable Gregory M. Sleet
_____

Submitted Under Third Circuit LAR 34.1(a)
January 16, 2015
_____

Before: HARDIMAN, SCIRICA and BARRY, Circuit Judges

(Filed: February 4, 2015)
_____

OPINION*
_____


BARRY, Circuit Judge

        Nancy Dinote appeals from the orders of the District Court (1) granting

_____
* This disposition is not an opinion of the full court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

defendants' motion for summary judgment, and (2) denying her motion for reconsideration. We will affirm.

I.

The essential facts, recounted in the light most favorable to Dinote, are as follows. On May 9, 2010, Dinote was arrested and detained overnight following a domestic dispute. The following afternoon she was arraigned by video and ordered released. Within the hour, the Justice of the Peace Court sent the release order to Central Offender Records ("COR"), the Delaware Department of Correction ("DOC") unit that controls inmate records and processes release paperwork. COR takes a number of steps in processing the paperwork, such as verifying that the detainee has no other open charges or warrants. The effect is that even if a judge has ordered a person released, and even if jail personnel are aware of that order, the institution awaits receipt of the requisite direction from COR before it permits a person to leave its custody.

On the night of May 10, before COR processed Dinote's release paperwork, she was transferred from the predominately male Sussex Correctional Institute ("SCI") to an all-women's institution, Baylor Women's Correctional Facility ("Baylor"). According to Dinote, she was injured during the transport, denied prompt medical treatment, and subjected to a strip search upon arrival at Baylor, where she was also made to shower, without soap, in a soiled stall. She was released from Baylor just before 1 p.m. on May 11, COR having finished processing her release paperwork.

Dinote's transfer is explained by a DOC practice or policy under which the DOC

2

permits law enforcement officers to bring women arrested in Sussex County, Delaware, to SCI as a courtesy, rather than requiring them to travel to Baylor in New Castle County – the only women's facility in Delaware. Defendant Carl Danberg, the (now former) DOC Commissioner, testified in a deposition that this accommodation permits "local law enforcement to get back on the street and involved in their policing duties faster." (App. 64.)[1] However, because SCI is a male prison and has a limited number of holding cells available to house women, female arrestees brought to SCI are then transferred to Baylor, usually within 24 hours.

On March 26, 2012, Dinote filed a complaint against Danberg; Rebecca McBride, the director of COR; Michael Deloy, the former warden of SCI; G.R. Johnson, the deputy or acting warden at SCI; and Patrick Ryan, the warden of Baylor. Of her original claims, only two remain for decision on appeal: a claim against Danberg, McBride, and Johnson for violation of the Fourteenth Amendment's Equal Protection Clause, and a claim against these defendants for violation of the Fourth Amendment's prohibition on unreasonable searches and seizures. The District Court granted defendants' motion for summary judgment, reasoning that the equal protection claim failed because male and female inmates can constitutionally be separated, and neither the transfer nor the centralized processing of releases amounted to a Fourteenth Amendment violation. On Dinote's Fourth Amendment claim, the Court held that there was no evidence that these

---

[1] Danberg also testified about other facilities that accommodate women, including a work release center and a violation of probation center, both on the same campus as SCI, but also indicated that these are not open to pretrial detainees.

defendants had anything to do with the strip search itself or the policy at Baylor, and therefore could not be held liable under 42 U.S.C. § 1983. Dinote's subsequent motion for reconsideration was denied. This appeal followed.

## II.

The District Court had jurisdiction under 28 U.S.C. §§ 1331 and 1343. We have jurisdiction under 28 U.S.C. § 1291. Our review of the order granting summary judgment is plenary. S.H. v. Lower Merion Sch. Dist., 729 F.3d 248, 256 (3d Cir. 2013). Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We "view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor." S.H., 729 F.3d at 256.

## III.

### A.

Dinote challenges as a violation of equal protection the practice of transferring female arrestees from SCI to Baylor within 24 hours of their arrival. A successful claim that a government practice or policy violates the Equal Protection Clause requires proof that the plaintiff "has been treated differently from persons who are similarly situated." Williams v. Morton, 343 F.3d 212, 221 (3d Cir. 2003). Even differential treatment is permissible, however, if it bears a sufficient nexus to a qualifying governmental interest; in the case of a gender classification, the state must show that the classification "serves important governmental objectives and that the discriminatory means employed are

4

substantially related to the achievement of those objectives." <u>United States v. Virginia</u>, 518 U.S. 515, 533 (1996) (citation and internal quotation marks omitted).[2]

Although Dinote argues that the transfer policy is unsupported by an important governmental objective, she does not dispute that prisoners may constitutionally be separated by gender. Her true challenge is to the means used to effectuate that goal; <u>i.e.</u>, that SCI transfers women to Baylor, and generally does so within 24 hours. While men can stay at SCI until their release, Dinote asserts, women cannot, though SCI could easily hold women for up to 48 hours. But transferring women, and quickly, to a facility that can accommodate them directly accomplishes the goal of providing gender-segregated institutions. <u>See</u> <u>Miss. Univ. for Women v. Hogan</u>, 458 U.S. 718, 725-26 (1982) (intermediate scrutiny requires "direct, substantial relationship between objective and means" to "assure that the validity of a classification is determined through reasoned analysis rather than through the mechanical application of" stereotypes about gender roles). Dinote ignores the record evidence that the number of women entering SCI can fluctuate: Johnson, SCI's warden, explained while in one shift one woman may arrive, in another six may arrive during an eight-hour period, and that while it is typically not a problem keeping the female population below the maximum supportable by SCI, "especially with our sort of 24-hour window," "the problem would be is if we got eight

_____

[2] Because, as will be seen, we conclude that the challenged practice passes intermediate scrutiny, we need not reach whether <u>Turner v. Safley</u>, 482 U.S. 78 (1987), under which "a [prison] regulation [restricting constitutional rights] passes muster if it is reasonably related to legitimate penological interests," applies. <u>Fraise v. Terhune</u>, 283 F.3d 506, 513 (3d Cir. 2002). <u>But</u> <u>cf.</u> <u>DeHart v. Horn</u>, 227 F.3d 47, 61 (3d Cir. 2000) (en banc) (applying <u>Turner</u> to religion-based equal protection claim).

and then two came in together, we wouldn't have anywhere to put those two." (App. 57.) The 24-hour limit to which SCI generally adheres is not, as Dinote argues, arbitrary, but is supported by sound gender-neutral reasoning. Finally, even if the introduction of COR resulted in processing delays over the previous system, Dinote concedes that most releases are still processed within 48 hours; the combination of this circumstance with SCI's policy does not undermine the direct relationship between that policy and its objective.

B.

Dinote argues that her strip search at Baylor violated the Fourth Amendment because she had been judicially ordered released by that time. As the District Court concluded, assuming *arguendo* a constitutional violation, these defendants cannot be liable for it. Under 42 U.S.C. § 1983, state actors are "liable only for their own unconstitutional conduct" and respondeat superior liability is not permitted. Barkes v. First Corr. Med., Inc., 766 F.3d 307, 316 (3d Cir. 2014). Supervisory liability is available only if the supervisor (1) "'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm,'" or (2) "'participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced' in the subordinate's unconstitutional conduct." Id. (alteration in original) (citations omitted).

Dinote does not contend that defendants participated in the search, and the record indicates that an institution's policy on strip searches of detainees arriving from other

6

institutions is set by the receiving institution. Dinote points to no evidence that these defendants were involved in establishing or maintaining Baylor's policy, or that they issued any direction with respect to the search. She merely alleges that they knew their actions would lead to searches at Baylor. Specifically, Dinote alleges that McBride knew about COR's alleged processing deficiencies and that she "was aware that this was regularly causing women to be transferred to [Baylor]," Reply Br. 5, but as support she relies on Danberg's testimony that COR sends processed release paperwork to a detainee's current institution. More than this attenuated relationship is necessary. Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005) (complaint did "not contain even a remote suggestion that [defendant] had contemporaneous, personal knowledge of [plaintiff's] transfer and acquiesced in it"). Even if Dinote did raise a genuine dispute of fact as to McBride's knowledge of transfers, this is still a step removed from knowledge of an (allegedly) illegal search.

Moreover, the record contradicts Dinote's claim that "[d]efendants know that the DOC strip-search policy causes all women coming to [Baylor] from another institution to be strip-searched." (Appellant's Br. 24.) Danberg testified that DOC policy requires strip searches when personnel have cause to believe an inmate has contraband, when an inmate leaves an institution and returns after contact with the public (as with, e.g., a court appearance), and when an inmate is moved into the general population. He also testified, however, that while it was "possible" that Baylor required a strip search of detainees coming from other institutions, he "[didn't] know that," and the warden at each

7

institution is responsible for setting the strip search policies at that institution, without the commissioner's review. (App. 70-71.) In short, Dinote was required to point to more than her own conjecture about the defendants' knowledge and acquiescence to survive summary judgment, and she has not. See Halsey v. Pfeiffer, 750 F.3d 273, 287 (3d Cir. 2014) (inferences premised on speculation or conjecture are insufficient); In re IKON Office Solutions, Inc., 277 F.3d 658, 666 (3d Cir. 2002) (allegations alone are insufficient to withstand summary judgment).[3]

IV.

Having rejected Dinote's claims of error, we will affirm the orders of the District Court.

---

[3] Dinote nominally appeals from the denial of her Rule 59(e) motion, but makes no argument in support of her position. She has, therefore, abandoned the issue and we need not address it. Kost v. Kozakiewicz, 1 F.3d 176, 182 (3d Cir. 1993). In any event, having reviewed the record, we conclude that the District Court did not abuse its discretion in denying reconsideration, because Dinote simply reiterated the arguments she made in opposing defendants' motion for summary judgment. N. River Ins. Co. v. CIGNA Reins. Co., 52 F.3d 1194, 1218 (3d Cir. 1995) (motion to alter or amend judgment must rely on intervening change in law, new evidence, or the need to correct a clear error of law or prevent manifest injustice); see also Jang v. Boston Scientific Scimed, Inc., 729 F.3d 357, 367 (3d Cir. 2013) (review of denial of Fed. R. Civ. P. 59(e) motion is for abuse of discretion).