PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 18-3429
_____

NICOLE HABERLE,
As Administratrix for the Estate of Timothy Nixon Deceased,

Appellant

v.

BOROUGH OF NAZARETH
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil No. 5-15-cv-02804)
District Judge: Honorable Joseph F. Leeson, Jr.
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
on April 18, 2019

Before: AMBRO, GREENAWAY, JR., and SCIRICA,
*Circuit Judges.*

(Filed: August 29, 2019)

Joseph E. Welsh
Lauer & Fulmer
701 Washington Street
Easton, PA  18042

   *Counsel for Appellant*

Rufus A. Jennings
John P. Morgenstern
Deasey Mahoney & Valentini
1601 Market Street
Suite 3400
Philadelphia, PA  19103

   *Counsel for Appellee*

————————————

OPINION OF THE COURT
————————————


**SCIRICA**, *Circuit Judge*


   Plaintiff Nicole Haberle's long-time partner Timothy Nixon suffered from severe mental illness. Nixon committed suicide during an encounter with the Borough of Nazareth Police Department, and Haberle sued the Borough. She alleged that the Police Department's failure to accommodate mentally disabled individuals constituted a violation of the Americans with Disabilities Act (ADA) and sought money damages.

Haberle's challenge is before us for a second time. The District Court had previously dismissed her complaint, which raised the ADA claim and several constitutional claims. We affirmed in part the District Court's dismissal, but remanded with instructions to provide Haberle leave to amend her ADA complaint. After Haberle filed an amended complaint, the District Court dismissed it for failure to allege intentional discrimination. Because Haberle's complaint raises a plausible claim that the Police Department was deliberately indifferent in failing to enact policies accommodating mental disability, we will reverse and remand.

**I.**

We have previously described the facts as follows:

Timothy Nixon suffered from a variety of mental health problems, including depression. For years, he had lived off and on with his long-time partner, Ms. Haberle, and their two children. On May 20, 2013, he had "a serious mental health episode involving severe depression." He called Haberle and told her that he was suicidal, and then broke into a friend's home and took a handgun. He next went to his cousin's apartment.

Fearing for Nixon's life, Haberle contacted the Borough of Nazareth Police Department. Officer Daniel Troxell obtained a warrant for Nixon's arrest, and, having learned that Nixon was still at his cousin's apartment, Troxell went there, accompanied by other

3

officers from the Borough and surrounding municipalities. Upon arriving at the apartment, some of the officers suggested setting up a perimeter and asking the Pennsylvania State Police to send crisis negotiators. Others suggested asking Haberle to help communicate with Nixon. Troxell rebuffed those suggestions, calling the other officers "a bunch of f[—]ing p[—]sies." He declared his intention to immediately go to the apartment, because "[t]his is how we do things in Nazareth." He did as he said, knocked on the door of the apartment, and identified himself as a police officer. Nixon then promptly went into one of the bedrooms of the apartment and turned the stolen gun on himself.

*Haberle v. Troxell* (*Haberle I*), 885 F.3d 170, 174 (3d Cir. 2018) (internal citations omitted, alterations in original).

Haberle sued the Borough of Nazareth, several members of its Police Department including Officer Troxell, and other Borough officials (collectively, defendants). She claimed that Nixon's suicide was the foreseeable result of Officer Troxell's decision to unconstitutionally seize Nixon in violation of the Fourth Amendment; Officer Troxell's actions constituted a "state-created danger" in violation of the Fourteenth Amendment Due Process Clause; and the Borough's failure to implement police procedures to accommodate disabled individuals violated the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101–213. *Id.* at 175. She sought money damages. Defendants successfully moved to dismiss Haberle's complaint, and she appealed.

4

On appeal, we upheld the District Court's dismissal of Haberle's Fourth Amendment (unconstitutional seizure) and Fourteenth Amendment (state-created danger) claims. *Id.* at 176–78. We also held that, while the ADA applied to arrests, Haberle had not stated a claim for damages "because she [did] not allege facts showing that any inaction of the Borough reflect[ed] deliberate indifference," which would be necessary to sustain a claim for damages. *Id.* at 178. We remanded with the direction that Haberle be given an opportunity to amend her complaint to cure that defect. *Id.* at 182.

Haberle then filed an amended complaint. She alleged that the Borough had "a history of violating the legal rights of residents of Nazareth," listing use of excessive force, unlawful prosecution, and retaliation as examples. App'x 60–61 (Complaint ¶ 29). With respect to the Borough's disability accommodation practices, Haberle alleged that "[p]rior to the events underlying this action, a set of policies and procedures had been drafted by Officer Frederick Lahovski, Jr." which "would have provided guidance to the Department in dealing with interactions with emotionally disturbed persons, such a[s] Timothy [Nixon]." App'x 62 (Complaint ¶¶ 30, 32). The Police Department did not adopt that policy. App'x 63 (Complaint ¶ 39). Haberle also alleged that the Department's officers and chief "routinely encountered several known mentally challenged individuals including two individuals known as 'Dickey' and 'Rosie,'" and "had a custom and practice of being verbally abusive, harassing, and, in at least one instance, arresting a mentally challenged person, including 'Dickey' and 'Rosie' without regard to, or accommodation of, their mental disability." App'x 63 (Complaint ¶¶ 35–36). She also asserted that "[h]ad Defendant Nazareth adopted the policy drafted by Officer Lahovski, or otherwise had in place effective policies

5

and procedures for dealing with mentally ill residents, and effective disciplinary procedures to enforce those policies, Timothy would have received the professional medical assistance which he so desperately needed." App'x 64 (Complaint ¶ 43).

On defendants' motion, the District Court dismissed Haberle's amended complaint for failure to allege deliberate indifference. *See Haberle for Estate of Nixon v. Borough of Nazareth*, No. 15-2804, 2018 WL 4770682 (E.D. Pa. Oct. 2, 2018). Haberle now appeals.[1]

## II.

To make out a claim for monetary damages under the ADA, Haberle must show deliberate indifference on the part of the Borough. *See S.H. ex rel. Durrell v. Lower Merion Sch. Dist.*, 729 F.3d 248, 263 (3d Cir. 2013). We have explained that deliberate indifference can be satisfied on a showing "the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Beers-Capitol v. Whetzel*, 256 F.3d 120, 131 (3d Cir. 2001) (quoting *Farmer v. Brennan*, 511 U.S. 825, 842 (1994)).[2] Haberle can establish such deliberate

---

[1] The District Court had jurisdiction under 28 U.S.C. §§ 1331 and 1343. This court has appellate jurisdiction under 28 U.S.C. § 1291. We review the District Court's dismissal under Federal Rule of Procedure 12(b)(6) *de novo*. *Haberle*, 885 F.3d at 175 n.4. In reviewing the grant of a motion to dismiss, we accept all well-pleaded facts as true and draw all reasonable inferences in the plaintiff's favor. *Id.* at 174 n.1.

[2] Though *Beers-Capitol* and *Farmer* involved 42 U.S.C. § 1983 actions, the "definition of deliberate indifference in the .

6

indifference in one of two ways: "(i) showing that the [Department's existing policies] failed to adequately respond to a pattern of past occurrences of injuries like the plaintiffs', or (ii) showing that the risk of constitutionally cognizable harm was 'so great and so obvious that the risk and the failure of supervisory officials to respond will alone' support finding [deliberate indifference]." *Id.* at 136–37 (internal citations omitted); *Haberle I*, 885 F.3d at 181. We remanded in *Haberle I* to provide Haberle the chance to plausibly allege either of those two conditions.

Haberle contends the District Court erred in concluding her amended complaint does not allege the Department failed to adequately respond to a pattern of like injuries.[3] We agree with the District Court that conclusory allegations about Department misconduct do not amount to a plausible claim for

.. ADA context is consistent with our standard of deliberate indifference in the context of § 1983 suits by prison inmates." *S.H.*, 729 F.3d at 263 n.23.

[3] Haberle's reply brief suggests in passing that the risk of harm like Nixon's was so great and obvious the Borough's failure to respond evidences deliberate indifference. *See* Reply Br. at 4–5. "Raising an issue in a reply brief is too late, for '[a]s a general matter, an appellant waives an argument in support of reversal if it is not raised in the opening brief.' '[W]here an issue is raised for the first time in a reply brief, we deem it insufficiently preserved for review before this court.'" *Garza v. Citigroup Inc.*, 881 F.3d 277, 284–85 (3d Cir. 2018) (citations omitted, alterations in original) (first quoting *In re: Asbestos Prods. Liab. Litig. (No. VI)*, 873 F.3d 232, 237 (3d Cir. 2017); then quoting *Kost v. Kozakiewicz*, 1 F.3d 176, 182 (3d Cir. 1993)).

relief. We explained before that "general allegations that the Borough has 'a history of violating the civil rights of residents'" were insufficient to demonstrate "a pattern of past occurrences of injuries *like the plaintiff*['*s*]," *id.* at 182 (citations omitted, alterations in original), and Haberle's repetition of that allegation does not cure the defect we previously recognized.

But Haberle's amended complaint adds new allegations that together amount to a plausible claim that the Borough's Police Department was deliberately indifferent in the face of a pattern of past occurrences of "injuries" like Nixon's. *See id.* at 181. She alleges Department officers and its chief "routinely" encountered "mentally challenged individuals," including two specifically named individuals. App'x 63 (Complaint ¶ 35). In those encounters, the Complaint alleges, Department officers were often "verbally abusive" and "harassing," and they performed arrests without accommodating the individuals' disabilities. App'x 63 (Complaint ¶ 36). In response to those and similar events, Officer Lahovski drafted a policy to guide Department interactions with disabled individuals. App'x 62, 63 (Complaint ¶ 32, 37). He relied on his personal mental health training, Police Department procedures, and consultation with mental health professionals to draft the policy. App'x 62 (Complaint ¶¶ 31, 33). Haberle further alleges that "[i]n drafting the said proposed policy, Officer Lahovski[] identified for Borough officials the grave risks to mentally challenged persons as a result of the Police Department continuing to operate without proper policies and procedures for the accommodation of mentally disabled persons," but the Department did not adopt that or any other accommodation policy. App'x 63–64 (Complaint ¶¶ 38–39, 41).

Those allegations meet our directive to allege "facts indicating that the policies were drafted because of an awareness that the pre-existing policies were substantially likely to lead to a violation of citizens' rights." *Haberle I*, 885 F.3d at 182. They amount to a plausible claim the Department was deliberately indifferent by failing to adopt the policies Officer Lahovski proposed. The District Court concluded otherwise on the basis that Haberle had not described "a pattern of Nazareth police mishandling encounters with citizens experiencing mental health crises that result in citizens' suicides," 2018 WL 4770682, at *4, but Haberle need not plead such specific allegations. She contends the Department deliberately failed to accommodate disabled individuals in police encounters in violation of the ADA. The past misconduct she invokes in her complaint did not have to result in the exact injury suffered by Nixon. Her amended pleading accordingly meets the level of specificity we prescribed in *Haberle I*: it alleges facts that support a history of encounters between disabled individuals and Department personnel that resulted in harm to those individuals, the Department's awareness of those encounters and their risks, and its failure to adopt an offered policy to address them.

## III.

Because Haberle has plausibly alleged a violation of the ADA, we will reverse the District Court's grant of the Borough's motion to dismiss and remand for further proceedings consistent with this opinion.