**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 19-3346
_____

ANDRE D. BUTLER,

Appellant

v.

HOMESITE INSURANCE COMPANY; MALCOLM ROBINSON

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Action No. 2:18-cv-04160)
District Judge:  Honorable Paul S. Diamond

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
March 13, 2020

Before: AMBRO, GREENAWAY, JR. and PORTER, Circuit Judges

(Opinion filed: April 13, 2020)

_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

PER CURIAM

Andre Butler appeals pro se from the District Court's summary-judgment rulings in this diversity action.[1]  For the reasons that follow, we will affirm.

I.

Because we write primarily for the parties, who are familiar with the background of this case, we discuss that background only briefly.  Butler, who lives in Philadelphia, held an insurance policy with Homesite Insurance Company ("Homesite").  The policy covered personal property damage caused by, inter alia, the "[a]ccidental discharge or overflow of water or steam from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or from within a household appliance."  (Dist. Ct. docket # 64-4, at 21 (emphasis omitted).)  However, the policy did not cover damage caused by flood, surface water, "[w]ater which backs up through sewers or drains or which overflows from a sump," or "[w]ater below the surface of the ground, including water which . . . seeps or leaks through a building, sidewalk, driveway, foundation, . . . or other structure."  (Id.)

In August 2018, Butler discovered that some of his personal property stored in the basement of his residence had been damaged by water.  At the time, he could not identify the source of the water, and it appeared to him that the pipes and water heater were

_____

[1] For diversity jurisdiction to lie, there must be complete diversity of citizenship amongst the parties and the amount in controversy must exceed $75,000.  See In re Diet Drugs Prods. Liab. Litig., 418 F.3d 372, 375-76 (3d Cir. 2005) (citing 28 U.S.C. § 1332(a)).

working properly.  He later acknowledged that it had been raining, but he disputes the notion that this was the cause of the damage.  Eight days after discovering his damaged property, he submitted an insurance claim via Homesite's website.  The claim was assigned to claims adjuster Malcolm Robinson.  In the days that followed, Robinson spoke over the phone with Butler, Butler's wife, Butler's landlord, and a purported plumber named Henry who signed the two invoices that Butler submitted to Homesite in support of his insurance claim.  There were material inconsistencies in the accounts given by the individuals with whom Robinson spoke, and an investigation conducted by Homesite's Special Investigations Unit ("SIU") revealed that the license numbers provided by Henry were likely fake.[2]  In the end, Homesite denied Butler's claim for "[c]oncealment or [f]raud."  (Dist. Ct. docket # 64-5, at 32.)

Butler responded by filing a pro se complaint in the District Court against Homesite and Robinson (hereinafter collectively referred to as "Defendants").  The complaint raised claims for breach of contract, fraud, intentional infliction of emotional distress, "liability," and "failure to deal fairly with insureds."  (See Compl. 8-11.)  In light of these claims, Butler sought, inter alia, $186,164 in compensatory damages and at least

Those requirements have been met in this case.

[2] The invoices consisted of generic "work order" forms and contained no letterhead.  SIU's investigation revealed that none of the license numbers provided by Henry matched a valid license number in Philadelphia.  When Butler and/or his wife subsequently claimed that Henry was licensed in New Jersey, SIU determined that only one of Henry's license numbers matched a valid license number in New Jersey, and that this license number was for a hearing aid dispensary license.

$1 million in punitive damages.  After conducting discovery, the parties filed cross-motions for summary judgment.  In October 2019, the District Court granted Defendants' summary-judgment motion and denied Butler's cross-motion.  Butler timely filed a motion for reconsideration, which the District Court denied.  This timely appeal followed.[3]

## II.

We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291.  We review the District Court's summary-judgment rulings under a plenary standard.  See Barna v. Bd. of Sch. Dirs. of Panther Valley Sch. Dist., 877 F.3d 136, 141 (3d Cir. 2017).  Summary judgment is appropriate when the movants "show[] that there is no genuine dispute as to any material fact and the movant[s] [are] entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Although the non-movant's evidence "is to be believed, and all justifiable inferences are to be drawn in his favor in determining whether a genuine factual question exists," summary judgment should be granted "unless there is sufficient evidence for a jury to reasonably find for the nonmovant."  Barefoot Architect, Inc. v. Bunge, 632 F.3d 822, 826 (3d Cir. 2011) (internal quotation marks omitted).

Butler's opening brief raises 16 arguments in support of his challenge to the District Court's summary-judgment rulings.  We agree with Defendants that each of these arguments is meritless and/or is not properly before us because Butler failed to raise it in

---

[3] In bringing this appeal, Butler does not challenge the District Court's denial of his

the District Court in the first instance. See Del. Nation v. Pennsylvania, 446 F.3d 410, 416 (3d Cir. 2006) ("Absent exceptional circumstances, this Court will not consider issues raised for the first time on appeal."). We see the need to specifically discuss only a couple of Butler's arguments here. See United States v. Begin, 696 F.3d 405, 412 (3d Cir. 2012) ("The court need not discuss every argument made by a litigant if an argument is clearly without merit." (quoting United States v. Cooper, 437 F.3d 324, 329 (3d Cir. 2006))).[4]

One of Butler's arguments concerns the length of the parties' summary-judgment motions. Butler noticed that neither the Federal Rules of Civil Procedure nor the District Court's local rules have a page limit for summary-judgment motions. Nevertheless, because he also noticed that some other district court's local rules set forth a 20-page limit for such motions, he "believe[d] that it is better to ask the court for permission than to assume." (Dist. Ct. docket # 62, at 3.) Accordingly, he asked the District Court for leave to file a summary-judgment motion that exceeded 20 pages. The District Court granted that motion and ordered that Butler's summary-judgment motion not exceed 25 pages. That order did not address the length of Defendants' forthcoming summary-judgment motion.

---

motion for reconsideration.

[4] To the extent that Butler's reply brief presents arguments that were not raised in his opening brief, we deem those arguments forfeited. See Haberle v. Borough of Nazareth, 936 F.3d 138, 141 n.3 (3d Cir. 2019).

Butler subsequently filed a 25-page summary-judgment motion. Defendants' summary-judgment motion, meanwhile, was 26 pages long. Butler now argues that the 25-page limit (a) prevented the District Court from considering "important matters" and (b) demonstrates that the District Court was biased against him. But Butler has not identified the "important matters" that were not considered, and we are not persuaded by his allegation of bias. To be sure, the District Court could have denied as unnecessary Butler's request for permission to file a summary-judgment motion that exceeded 20 pages. However, we see nothing in the District Court's page-limit order that suggests that its decision to *grant* Butler's request, albeit with a restriction, reflects its bias against him. Although the District Court did not impose a page limit against Defendants, there is no indication that the absence of a page limit was due to bias; rather, as far as we can tell, it was simply because none of the parties made any request regarding the length of Defendants' summary-judgment motion. And, in the end, Defendants' motion was only a single page longer than Butler's motion.

The other argument of Butler's that we specifically discuss here concerns two statements made by the District Court in its summary-judgment order. On page 4 of that order, the District Court correctly stated that, "[w]hen deciding cross motions for summary judgment, I must consider each motion separately, drawing inferences against each movant in turn." (Dist. Ct. Order entered Oct. 7, 2019, at 4 (internal quotation marks omitted) (citing, inter alia, Auto-Owners Ins. Co. v. Stevens & Ricci Inc., 835 F.3d

388, 402 (3d Cir. 2016)).)  At the end of that order, the District Court stated that, "[h]aving ruled in favor of the Defendants on each of Plaintiff's claims, I will not separately address Plaintiff's Motion for Summary Judgment." (Id. at 13.)  Butler now contends that these two statements contradict one another, and that this contradiction indicates that the District Court was biased against him.  But we see no contradiction, and thus we see no bias.  The fact that the District Court's order did not specifically discuss the arguments raised in Butler's summary-judgment motion does not mean that the District Court failed to *consider* those arguments when ruling on the parties' summary-judgment motions.

Having carefully reviewed the record in this case, we cannot conclude that a jury could reasonably find in Butler's favor on any of the five causes of actions raised in his complaint.  Accordingly, we will affirm the District Court's decision to grant summary judgment in favor of Defendants and deny Butler's cross-motion.[5]

---

[5] Butler and Defendants have each filed an unopposed motion for leave to supplement the appendix.  Both of these motions are granted.  Defendants' motion for leave to file a sur-reply brief is denied.