Palacios Alvarado v. Garland

BIA
Conroy, IJ
A206 726 758

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 4th day of October, two thousand twenty-three.

PRESENT:
> JON O. NEWMAN,
> RAYMOND J. LOHIER, JR.,
> MICHAEL H. PARK,
> *Circuit Judges.*

_____

LUCAS LEONEL PALACIOS ALVARADO,
> *Petitioner*,

v.                                                    **22-6366**
                                                      **NAC**

MERRICK B. GARLAND, UNITED STATES ATTORNEY GENERAL,
> *Respondent.*

_____

FOR PETITIONER:              Kai W. De Graaf, Esq., Ada, MI.

**FOR RESPONDENT:** Brian M. Boynton, Principal Deputy Assistant Attorney General; Jonathan A. Robbins, Assistant Director; Michael C. Heyse, Senior Litigation Counsel, Office of Immigration Litigation, United States Department of Justice, Washington, DC.

UPON DUE CONSIDERATION of this petition for review of a Board of Immigration Appeals ("BIA") decision, it is hereby ORDERED, ADJUDGED, AND DECREED that the petition for review is DENIED.

Petitioner Lucas Leonel Palacios Alvarado, a native and citizen of Honduras, seeks review of a July 26, 2022 decision of the BIA affirming a February 14, 2022 decision of an Immigration Judge ("IJ") denying his application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). *In re Palacios Alvarado*, No. A206 726 758 (B.I.A. July 26, 2022), *aff'g* No. A206 726 758 (Immigr. Ct. N.Y.C. Feb. 14, 2022). We assume the parties' familiarity with the underlying facts and procedural history.

We have reviewed the IJ's decision as modified and supplemented by the BIA, and therefore consider the IJ's nexus findings with respect to asylum and withholding of removal, the IJ's findings as to government involvement and acquiescence with respect to CAT relief, and the BIA's additional reasoning on

those points and its findings regarding waiver.[1]   *See Xue Hong Yang v. U.S. Dep't of Just.*, 426 F.3d 520, 522 (2d Cir. 2005); *Yan Chen v. Gonzales*, 417 F.3d 268, 271 (2d Cir. 2005).   We review the IJ's factual findings for substantial evidence, and we review questions of law and the application of law to fact *de novo*.   *Yanqin Weng v. Holder*, 562 F.3d 510, 513 (2d Cir. 2009); *see also* 8 U.S.C. § 1252(b)(4)(B) ("[T]he administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary.").

**I.     Asylum and Withholding of Removal**

To establish eligibility for asylum, Palacios Alvarado had to show that he suffered past persecution or had a well-founded fear of future persecution "on account of race, religion, nationality, membership in a particular social group, or political opinion."   8 U.S.C. §§ 1101(a)(42)(A), 1158(b)(1)(A), (B)(i).   To qualify for withholding of removal, he similarly had to establish a "clear probability" of persecution based on "race, religion, nationality, membership in a particular social group, or political opinion."   *Kone v. Holder*, 596 F.3d 141, 147 (2d Cir. 2010); *see* 8 C.F.R. § 1208.16(b).   For either form of relief, he had to show that a protected

---

[1] We therefore do not consider Palacios Alvarado's challenges to the IJ's particularly serious crime finding and the exclusion of evidence (that he acknowledges is relevant only to that finding).

ground was "at least one central reason for" the claimed persecution. 8 U.S.C. § 1158(b)(1)(B)(i) (asylum); *see Quituizaca v. Garland*, 52 F.4th 103, 109–14 (2d Cir. 2022) (deferring to BIA's conclusion that the "one central reason" standard also applies to withholding of removal). Palacios Alvarado asserted that a gang harassed, threatened, abducted, and assaulted him because of his anti-gang political opinion and membership in a particular social group consisting of young Hondurans who are either vulnerable to sexual abuse or subject to violent gang recruitment efforts.[2]

The agency reasonably found that the gang harmed Palacios Alvarado because of its criminal interests in recruitment and extortion, rather than because of his political opinion or the traits associated with his proposed social groups. *See Melgar de Torres v. Reno*, 191 F.3d 307, 313–14 (2d Cir. 1999) (noting that general crime and violence in a country is not a stated ground for asylum and withholding of removal). While Palacios Alvarado asserted that gang members assaulted him in retaliation for his refusal to join their gang or pay them, such refusals are not, in themselves, an expression of political opinion. *See Zelaya-Moreno v. Wilkinson*, 989

---

[2] Palacios Alvarado does not argue that the gang targeted him because of his religion—or that the BIA erred in finding that he waived that claim.

F.3d 190, 200 (2d Cir. 2021). This is the case even where, as here, the applicant stated that the reason he refused to comply with the gang's demands was because complying would have been contrary to his values. *Id*. at 201 ("[D]isapproving of things that have a negative impact on one's life or even one's country does not necessarily amount to a *political* opinion."). But Palacios Alvarado does not identify a way in which his opposition to the gang "took on a political dimension by transcending mere self-protection." *Hernandez-Chacon v. Barr*, 948 F.3d 94, 104 (2d Cir. 2020) (discussing when opposition to government corruption constitutes political opinion).

Further, Palacios Alvarado failed to demonstrate that his proposed particular social groups were cognizable. A cognizable social group must have "a common immutable characteristic," be "defined with particularity," and be "socially distinct within the society in question." *Paloka v. Holder*, 762 F.3d 191, 196 (2d Cir. 2014) (quoting *Matter of M-E-V-G-*, 26 I. & N. Dec. 227, 237 (B.I.A. 2014)). Particularity requires that the group be "defined by characteristics that provide a clear benchmark for determining who falls within the group" and that membership not be "amorphous, overbroad, diffuse, or subjective." *Id*. (quoting *M-E-V-G-*, 26 I. & N. Dec. at 239). Social distinction requires that "society

as a whole views [the] group as socially distinct." *Id*. Here, Palacios Alvarado appears to argue that "young people" are viewed as a distinct group in Honduran society. This is a different group than what he proposed to the agency, and the evidence he cites—his own testimony and a psycho-social evaluation—does not address whether that group, or the previously proposed subsets of that group, are socially distinct in Honduras. Nor has Palacios Alvarado identified a "clear benchmark" for determining who is "young." *Cf. id*. at 196, 199 (quoting *M-E-V-G-*, 26 I. & N. Dec. at 239) (remanding for further consideration of a particular social group where applicant had refined the proposed group to a specific age range that was supported by the evidence). Moreover, the record reflects that the gang acted to increase its membership and wealth. As we have observed previously, "[w]hen the harm visited upon members of a group is attributable to the incentives presented to ordinary criminals rather than to persecution, the scales are tipped away from considering those people a 'particular social group' within the meaning of the [Immigration and Nationality Act]." *Ucelo-Gomez v. Mukasey*, 509 F.3d 70, 73 (2d Cir. 2007).

**II.    CAT**

The record does not compel a conclusion that the agency erred in finding

6

that Palacios Alvarado failed to demonstrate that the Honduran government is more likely than not to participate in or acquiesce to his torture.[3] *See* 8 C.F.R. §§ 1208.16(c), 1208.17. A CAT applicant has the burden to establish that he will "more likely than not" be tortured "by, or at the instigation of, or with the consent or acquiescence of, a public official acting in an official capacity or other person acting in an official capacity." 8 C.F.R. §§ 1208.16(c)(2), 1208.18(a)(1). To establish acquiescence, the applicant must show that "the public official, prior to the activity constituting torture, have awareness of such activity and thereafter breach his or her legal responsibility to intervene to prevent such activity." *Id*. § 1208.18(a)(7); *see Khouzam v. Ashcroft*, 361 F.3d 161, 171 (2d Cir. 2004) ("[T]orture requires only that government officials know of or remain willfully blind to an act and thereafter breach their legal responsibility to prevent it."); *Pierre v. Gonzales*, 502 F.3d 109, 118 (2d Cir. 2007) ("A *private* actor's behavior can constitute torture under the CAT without a government's specific intent to inflict it if a government official is aware of the persecutor's conduct and intent and acquiesces in violation of the official's duty to intervene.").

---

[3] Regardless of whether Palacios Alvarado adequately raised this issue in his brief to the BIA, we may reach it because the BIA addressed it. *See Ruiz-Martinez v. Mukasey*, 516 F.3d 102, 112 n.7 (2d Cir. 2008).

7

First, substantial evidence supports the agency's conclusion that Palacios Alvarado did not establish that he was previously tortured by police officers. *See Quintanilla-Mejia v. Garland*, 3 F.4th 569, 584 (2d Cir. 2021) ("apply[ing] the substantial evidence standard to questions of fact raised in . . . CAT challenges"). "[S]ubstantial evidence review does not contemplate any judicial reweighing of evidence. Rather, it requires us to ask only whether record evidence compelled an acquiescence finding different from that reached by the agency." *Id*. at 593–94. Palacios Alvarado testified that he was abducted by two people in police uniforms, but that he did not know whether they were police officers, and there is no evidence that they said anything that would indicate that they were officers. *See Siewe v. Gonzales*, 480 F.3d 160, 167–68 (2d Cir. 2007) (holding that, where the evidence could support multiple inferences, we defer to the IJ's choice between those inferences). Moreover, the IJ pointed to other circumstantial evidence that supported the conclusion that police officers were not involved with the gang, including Palacios Alvarado's testimony that the gang threatened to kill him if he went to the police, and the absence of threats from the police when he and his grandmother reported an attack.

The remaining evidence does not compel the conclusion that the Honduran

government would acquiesce to Palacios Alvarado's torture by gang members. Palacios Alvarado asserted that he reported a gang assault to the police, and he and his grandmother followed up on the report a few times, but the police told him only that they were working on his case and did not have any results; a few months later, the gang abducted and sexually assaulted him. Accordingly, the record reflects that the police were aware that gang members had assaulted Palacios Alvarado and that they did not prevent further harm. But Palacios Alvarado has not shown that the police willfully ignored his complaint, that they failed to take further action because they were complicit with his abusers, or that they knew that the gang planned to escalate its abuse to torture. *See* 8 C.F.R. § 1208.18(a)(7) ("Acquiescence of a public official requires that the public official, prior to *the activity constituting torture*, have awareness of *such activity*." (emphasis added)); *cf. Pierre*, 502 F.3d at 111 (holding that the intent element of torture is not satisfied where abuses are the "result of poverty, neglect, or incompetence").

The country conditions evidence in the record reflects that the Honduran government is attempting to combat gang violence, albeit with limited success, and that there are problems with police corruption. Contrary to Palacios Alvarado's argument, there is no indication that the agency overlooked that

9

evidence. *See Xiao Ji Chen v. U.S. Dep't of Just.*, 471 F.3d 315, 336 n.17 (2d Cir. 2006) ("[W]e presume that [the agency] has taken into account all of the evidence before [it], unless the record compellingly suggests otherwise."). We have recognized the possibility that government acquiescence may exist where some officials attempt to prevent torture, other officials are complicit, and the government is "unable to actually prevent the torture from taking place." *De La Rosa v. Holder*, 598 F.3d 103, 110–11 (2d Cir. 2010). As noted, the record here establishes that some government officials are complicit in gang violence, and that such violence persists notwithstanding other officials' efforts to curb it. But absent evidence that government officials participated in, were aware of, or were willfully blind to Palacios Alvarado's past torture, or that they otherwise have some involvement in the group that targeted him, the record does not compel the conclusion that the Honduran government is more likely than not to acquiesce to his torture in the future. *See Mu Xiang Lin v. U.S. Dep't of Just.*, 432 F.3d 156, 160 (2d Cir. 2005) (requiring "particularized evidence" beyond general country conditions to support a CAT claim); *cf. Quintanilla-Mejia*, 3 F.4th at 593–94 (finding that the record did not compel the conclusion that the Salvadoran government would acquiesce to gang torture where the petitioner had not reported prior gang assaults

to the government, and country conditions evidence showed that gang violence persisted—including instances of involving police misconduct—but also that the government was taking steps to combat gang violence).

For the foregoing reasons, the petition for review is DENIED. All pending motions and applications are DENIED and stays VACATED.

FOR THE COURT:
Catherine O'Hagan Wolfe,
Clerk of Court